**PLATORO LIMITED, INC.,**
Plaintiff-Appellant,

v.

**The UNIDENTIFIED REMAINS OF A VESSEL, her cargo, apparel, tackle, and furniture, in a cause of salvage, civil and maritime, Defendants-Appellees.**

No. 78–1052.

United States Court of Appeals,
Fifth Circuit.

April 4, 1980.

Rehearing and Rehearing En Banc
Denied May 8, 1980.

Jack D. Sanchez, Brownsville, Tex., for plaintiff-appellant.

John L. Hill, Atty. Gen., Paul B. Gavia, Connie Ode, Asst. Attys. Gen., Austin, Tex., for defendants-appellees.

Before AINSWORTH and HENDERSON, Circuit Judges, and HUNTER,* District Judge.

AINSWORTH, Circuit Judge:

Plaintiff Platoro Limited, Inc. appeals from a judgment of the United States District Court for the Western District of Texas dismissing its suit *in rem* to obtain title to the unidentified remains of a Spanish vessel abandoned over 400 years earlier (in 1554) and resting on the bottom of the Gulf of Mexico off the coast of Padre Island, Texas. Alternatively, plaintiff sought reasonable compensation for salvage services in recovering the vessel. Plaintiff requested issue of process against the State of Texas pursuant to a resolution of the Texas Legislature which authorized suit against it. The court held that plaintiff's suit was barred by the applicable statute of limitations and granted the State of Texas' motion to dismiss. We reverse and remand.

■ On September 11, 1967, Platoro, an Indiana corporation, commenced operations for recovery of the remains of a 16th century Spanish ship which was found buried under a layer of sand in 30–40 feet of water in the Gulf of Mexico.[1] Thereafter, on December 13, 1967, the State of Texas filed suit in the 28th Judicial District Court of Kenedy County, Texas, to enjoin Platoro from further recovery operations. The injunction was issued on December 31 and Platoro ceased all activities. Negotiations between Platoro and the Texas Land Commissioner followed and a settlement was

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. The State of Texas points out in its brief that Platoro commenced recovering the artifacts in question "without a permit to do business in Texas, without a permit to explore or excavate an archeological site, and without any notice to the State of Texas." However, the Texas Antiquities Code, Tex.Rev.Civ.Stat.Ann. art. 6145–9 (Vernon), which deals explicitly with the State's requirements for salvaging vessels abandoned at sea, had not been enacted at the time Platoro engaged in its salvaging operations.

Texas also argues that Platoro violated Tex. Pen.Code Ann. art. 147b (Vernon) (repealed 1969) by failing to obtain a permit or license to explore or excavate "in or on any prehistoric ruins or archeological or vertebrate paleontological site in Texas," and Tex.Bus.Corp.Act. Ann. art. 8.01 (Vernon), by failing to obtain a certificate to transact business in the State of Texas. Whether appellant's activities were in violation of the Texas Penal Code is irrelevant to the issues involved here.

With regard to Platoro's failure to obtain a certificate to transact business in Texas, appellant may reasonably have assumed that such a certificate was not necessary considering the nature of its activities and the fact that they took place off the coast of Texas. Nonetheless, subsequent to the seizure of the artifacts by the State, Platoro filed for a Certificate of Authority to transact business in Texas, which was granted in 1969 and is still in force.

Moreover, Platoro's failure to obtain the above permits prior to commencing its salvaging activities does not prohibit it from seeking compensation in this case.

reached whereby Platoro and the Commissioner agreed to divide the artifacts recovered. Pursuant to the agreement, Platoro returned the artifacts from Indiana to state custody in Texas.

On August 6, 1969, approximately 19 months after its operations had ceased, and upon realizing that the State was not going to honor its agreement with the Commissioner, Platoro filed an *in rem* action in federal court in the Southern District of Texas to obtain title to the artifacts recovered or, alternatively, reasonable compensation for salvage services. The district court held that plaintiff Platoro was entitled to compensation for its salvaging operations and awarded judgment in the amount of $131,248. *Platoro Limited, Inc. v. The Unidentified Remains of a Vessel*, 371 F.Supp. 356 (S.D.Tex.1973). On appeal, this court reversed the judgment on the ground that the district court lacked *in rem* jurisdiction, since the artifacts were not located within the Southern District of Texas when the suit was filed.[2] *Platoro Limited, Inc. v. The Unidentified Remains of a Vessel*, 508 F.2d 1113 (5th Cir. 1975). The court remanded the case to the district court to dismiss the suit, which it did on May 17, 1975.

In a footnote to its opinion, this court also noted that the "proceeding raises serious Eleventh Amendment questions." *Id.* at 1115 n.3. Platoro, therefore, attempted to obtain permission from the State of Texas at the next legislative session to bring suit against it. Its efforts were unsuccessful, so on May 21, 1976 it again filed suit against the State of Texas, in federal court in the

Western District of Texas, alleging the same claims which were set forth in the prior suit. On August 13, 1976, the district court dismissed the suit based on the Eleventh Amendment's bar to the court's jurisdiction, since the State had failed to waive sovereign immunity.

At the next session of the Texas Legislature, Platoro succeeded in obtaining a waiver of sovereign immunity by virtue of a resolution which was signed by the Governor on May 27, 1977. This suit was then commenced on June 23, and on July 18, the State of Texas moved to dismiss plaintiff's complaint for lack of jurisdiction over the subject matter and for failure to state a claim on which relief could be granted.[3] In its motion, the State asserted, among other things, that Platoro's complaint failed to state a claim for remuneration for salvage services within the court's admiralty and maritime jurisdiction; also that the claim was barred by the applicable statute of limitations, 46 U.S.C. § 730.[4] The district court held that Platoro's action was barred by the two-year limitation period set out in section 730, and thus expressly found it unnecessary to decide whether plaintiff's complaint stated a salvage claim within the court's admiralty and maritime jurisdiction. Accordingly, on November 14, 1977, the district court dismissed plaintiff's suit and plaintiff brought this appeal.

The pertinent statutory provision, 46 U.S.C. § 730, establishes a two-year limitation period for suits for the recovery of remuneration for rendering salvage services, which period runs from the date the

---

2. Although the sunken vessel was buried in territorial waters within the Southern District of Texas and the salvaging operations took place there prior to the time suit was brought, Platoro had removed the artifacts recovered to date to its home office in Indiana and later, pursuant to an agreement with the State of Texas, had relinquished possession of them to Texas which has continually held them in Austin in the Western District of that state.

3. When the motion was orally argued, plaintiff Platoro's counsel stated that it was proceeding solely on its claim for compensation for salvage services, and no longer asserted a claim of title to the property.

4. 46 U.S.C. § 730 states:

A suit for the recovery of remuneration for rendering assistance or salvage services will not be maintainable if brought later than two years from the date when such assistance or salvage was rendered, unless the court in which the suit is brought shall be satisfied that during such period there had not been any reasonable opportunity of arresting the assisted or salved vessel within the jurisdiction of the court or within the territorial waters of the country in which the libelant resides or has his principal place of business.

services were rendered. The statute contains a proviso, however, that suit may be brought after two years if "during such period there had not been any reasonable opportunity of arresting the . . . salved vessel within the jurisdiction of the court." The action which precipitated this appeal was not commenced until July 1977, more than nine years after the salvage services were rendered. The artifacts made the subject of the suit were physically within the Western District of Texas at Austin since 1969 when plaintiff brought them there from Indiana. Thus, Platoro does not come within the above-quoted language of the tolling provision of the statute.

■ Nevertheless, the mere fact that a federal statute providing for substantive relief also sets a time limitation upon the institution of suit under the statute does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose. *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 559, 94 S.Ct. 756, 769, 38 L.Ed. 713 (1974); *Leake v. University of Cincinnati*, 605 F.2d 255, 259 (6th Cir. 1979); cf. *Mizell v. North Broward Hospital District*, 427 F.2d 468 (5th Cir. 1970). Judicial power to toll statutes of limitations on equitable grounds was firmly established in *Burnett v. New York Central Railroad*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). *Burnett* involved the dismissal for improper venue of an action filed in state court under the Federal Employers' Liability Act. At the time suit was later commenced in the proper district but in federal court, the limitations period established by the Act had already run. The Court noted that the period is not totally inflexible, but under appropriate circumstances may be extended. The basic question is whether tolling the statute in a particular case is in keeping with the legislative intent underlying the Act itself. 380 U.S. at 426, 85 S.Ct. at 1053. In noting that statutes of limitations are designed primarily to assure fairness to defendants by preventing the revival of claims that have been allowed to slumber until evidence has been lost and witnesses have disappeared, the Court pointed out that this "policy of repose" is frequently outweighed where "the interests of justice require the vindication of the plaintiff's rights." 380 U.S. at 428, 85 S.Ct. at 1054–55.

■ Tolling of the statute of limitations under the circumstances here is warranted to allow Platoro an opportunity properly to pursue its claim on the merits. Here, the vessel from which the artifacts were retrieved was located in the Southern District of Texas at the time Platoro's first suit was instituted, and the recovery operations made the basis of the suit took place there. It was not unreasonable for Platoro to assume these facts were sufficient for a determination that the court had proper jurisdiction over the res. In fact, the district court so held, although erroneously. *Platoro Limited, Inc., supra*, 371 F.Supp. at 358–59. It would not be inconsistent with the legislative intent underlying the statute at issue to avoid the injustice that would result from the dismissal of Platoro's claim because it made an erroneous choice with regard to the true location of the subject matter of the suit.

Furthermore, filing of Platoro's first lawsuit showed "proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962). Appellant was not dilatory in attempting to preserve its claim. After the State of Texas filed suit, Platoro negotiated an agreement with the State Land Commissioner to divide the artifacts. When it appeared that the State was not going to honor the agreement, appellant filed its suit well within the two-year period. When the decision in that case was reversed on appeal and this court noted that the proceeding raised serious Eleventh Amendment questions, Platoro apparently realized that a waiver of sovereign immunity would likely be necessary for a successful claim against the State. After failing to get a consent to suit resolution from the State at the next legislative session, Platoro

filed suit once again in order to protect its claim. After that action was dismissed, appellant successfully obtained a waiver of sovereign immunity from the Texas Legislature. Platoro brought the present suit within three weeks of the signing of the Texas Legislature resolution. At no time did a period of two years run without the intervention of legal action by appellant. Moreover, the State of Texas has been cognizant of this claim from almost the beginning. Texas initiated the controversy by filing suit for injunctive relief in 1967. At that time the State was aware that Platoro claimed compensation for salvaging the artifacts.

In the final balance, therefore, the circumstances favor tolling the statute of limitations and granting Platoro the right to have its claim adjudicated.[5]

■ We next consider the question whether Platoro's complaint states a claim for compensation for salvage services cognizable within the court's admiralty and maritime jurisdiction. The State of Texas argues that one of the elements of a salvage action—the existence of a marine peril—is absent from this controversy,[6] since the vessel has been "rest[ing] peacefully on the floor of the Gulf of Mexico for over 400 years," and is not "suffering from an impending peril of the sea." We disagree.

■ In a strikingly similar case, this court recently decided that a party claiming an award for the salvage of a vessel abandoned at sea could properly proceed under the court's admiralty jurisdiction. *Treasure Salvors, Inc. v. The Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330 (5th Cir. 1978). We said in that case that a "[m]arine peril includes more than the threat of storm, fire or piracy to a vessel in navigation."[7] *Id.* at 337. Thus, a marine peril existed in a wrecked and abandoned vessel, which sank in 1622 off the Marquesas Keys in waters off the Florida coast, and whose location was unknown for over 300 years. Further, the court said that this peril existed even after discovery of the location of the vessel, since it was "still in peril of being lost through the actions of the elements."[8] *Id.* at 337.

Our decision in *Treasure Salvors* is thus dispositive of the issue whether appellant properly invoked the court's admiralty jurisdiction in its claim for compensation here.[9]

---

5. In view of our holding, we find it unnecessary to announce a broad rule regarding Platoro's contention that the statute of limitations did not begin to run until Texas gave its consent to suit. *See United States v. Fuston*, 143 F.2d 76 (10th Cir. 1944). Platoro's efforts to preserve its claim have operated in each instance to toll the statute sufficient to prevent a bar to maintaining its present suit.

6. It is well established that in order to present a valid salvage claim three elements must be shown: "(1) a marine peril,. (2) service voluntarily rendered when not required as an existing duty or from a special contract, and (3) success in whole or in part, or that the service rendered contributed to such success." *Legnos v. M/V Olga Jacob*, 498 F.2d 666, 669 (5th Cir. 1974). Texas complains that only the first of these elements is lacking.

7. In a footnote, the court noted that " '[t]he peril required in a salvage service need not necessarily be one of imminent and absolute danger. The property must be in danger, either presently or reasonably to be apprehended.' " *Treasure Salvors, Inc. v. The Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 337 n.13 (5th Cir. 1978), *quoting* Norris, The Law of Salvage § 185 (1958).

8. In our earlier statement that the vessel was resting on the bottom of the Gulf of Mexico, 30 to 40 feet under water, covered by 4 to 10 feet of sand, thus "impervious to weather conditions above the surface of the sea," with the "sand prevent[ing] deterioration underwater," *Platoro Limited, Inc. v. Unidentified Remains of a Vessel*, 508 F.2d 1113, 1114–15 n.1 (5th Cir. 1975), the court was not addressing the issue whether a marine peril existed for purposes of determining if plaintiff presented a valid salvage claim. Later, when we squarely considered the question in *Treasure Salvors, supra*, we determined that such conditions present a marine peril for purposes of meeting the requirements of a valid salvage action.

9. The State of Texas makes much of the fact that in *Treasure Salvors, supra*, the vessel was abandoned partially in international waters, whereas here the wreck lay in territorial waters off the Texas coast. This distinction, however, is not determinative of whether a marine peril existed for purposes of meeting the requirements of a salvage action.

We therefore hold that Platoro's complaint states a valid salvage claim and remand this case to the district court for a determination of the merits.

REVERSED AND REMANDED.