400 S.E.2d 239

**NORFOLK AND WESTERN RAILWAY COMPANY, a Corporation**

**v.**

**Honorable Callie TSAPIS, Judge of the Circuit Court of Brooke County.**

**No. 19788.**

Supreme Court of Appeals of West Virginia.

Dec. 6, 1990.

---

Fred Adkins and Luke A. Lafferre, Huddleston, Bolen, Beatty, Porter & Copen,

Huntington, for Norfolk & Western Ry. Co.

Jay T. McCamic, McCamic & McCamic, Wheeling, for Honorable Callie Tsapis.

MILLER, Justice:

■ In this original proceeding in prohibition, we are asked to reconsider that portion of our holding in *Gardner v. Norfolk & Western Railway Co.*, 179 W.Va. 724, 372 S.E.2d 786 (1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989), in which we declined to apply the doctrine of *forum non conveniens* to cases brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60.[1]

In *Gardner*, there were 103 FELA cases filed against the relator, the Norfolk and Western Railway Company, in the Circuit Court of Brooke County. Forty-three of the plaintiffs were West Virginia residents, and the remaining sixty were nonresidents. The relator asserts that since that time an additional 818 cases have been filed in the Circuit Court of Brooke County involving 174 West Virginia plaintiffs and 644 nonresident plaintiffs.

In December of 1989, the relator filed with the circuit court motions to dismiss the litigation involving nonresident plaintiffs and motions to transfer the cases of certain resident plaintiffs to other circuit courts. In the alternative, the relator moved to certify a number of questions to this Court in light of our decision in *Gardner*. After hearing the arguments of counsel, the circuit court, by orders dated August 1, 1990, denied the motions. The relator subsequently instituted this proceeding in prohibition.

In *Gardner*, we recognized that the liberal venue provisions of 45 U.S.C. § 56 enable FELA suits to be brought in any county where the defendant does business.[2] Because the relator operates a portion of its railroad in Brooke County, it admitted in *Gardner* that it was subject to suit in Brooke County.

In *Gardner*, we traced in some detail the history of the FELA venue provisions. We also discussed the impact of several United States Supreme Court cases[3] dealing with the interrelationship of the Privileges and Immunities Clause of the United States Constitution[4] and the doctrine of *forum non conveniens*. In *Gardner*, we came to this conclusion regarding the availability of the doctrine in FELA cases:

> "Relying upon *Douglas [v. New York, N.H. & H.R.R. Co.*, 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929) ], the [*Missouri ex rel. Southern Ry. Co. v.] Mayfield,* [340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950) ] court held that the states were not precluded from applying the principle of *forum non conveniens* to FELA actions merely because the FELA empowers state courts to entertain suits arising under it. Instead, '[a]ccording to its own notions of *procedural* policy, a State may reject, as it may accept, the doctrine [of *forum non conveniens* ] for all causes of action begun in its courts.' *Id.*

---

1. The Syllabus in *Gardner* states:

    "The common-law principle of *forum non conveniens* and the similar state statute on removal of civil proceedings, *W.Va.Code,* 56–9–1 [1939], are not applicable to actions brought in the courts of this State under the Federal Employers' Liability Act, 45 *U.S.C.* §§ 51–60, as amended, in light of the strong policy favoring the plaintiffs' choice of forum in such cases and in light of the strong policy of *W.Va. Const.* art. III, § 17 providing access to the courts of this State."

2. 45 U.S.C. § 56 provides, in material part:

    "Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States."

3. *Missouri ex rel. Southern Ry. Co. v. Mayfield,* 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Douglas v. New York, N.H. & H.R.R. Co.,* 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929).

4. The Privileges and Immunities Clause provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1.

at 3, 71 S.Ct. at 2, 95 L.Ed. at 7 (emphasis added)." 179 W.Va. at 729, 372 S.E.2d at 791. (Emphasis in original).

A number of other courts have reached the same conclusion that the common law doctrine of *forum non conveniens* can be utilized to deny access to courts to nonresident plaintiffs in FELA cases in appropriate circumstances without running afoul of the Privileges and Immunities Clause. *Price v. Atchison, Topeka & Santa Fe Ry. Co.*, 42 Cal.2d 577, 268 P.2d 457, 43 A.L. R.2d 756, *cert. denied*, 348 U.S. 839, 75 S.Ct. 44, 99 L.Ed. 661 (1954); *Great N. Ry. Co. v. Superior Court*, 12 Cal.App.3d 105, 90 Cal.Rptr. 461 (1970), *cert. denied sub nom. Curtin v. Superior Court*, 401 U.S. 1013, 91 S.Ct. 1254, 28 L.Ed.2d 550 (1971); *Mobley v. Southern Ry. Co.*, 418 A.2d 1044 (D.C.App.1980); *Southern Ry. Co. v. McCubbins*, 196 So.2d 512 (Fla.App.1967); *Wieser v. Missouri Pac. R.R. Co.*, 98 Ill.2d 359, 74 Ill.Dec. 596, 456 N.E.2d 98 (1983); *Gonzales v. Atchison, Topeka & Santa Fe Ry. Co.*, 189 Kan. 689, 371 P.2d 193 (1962); *Maynard v. Chicago & N.W. Ry. Co.*, 247 Minn. 228, 77 N.W.2d 183 (1956); *Missouri Pac. Ry. Co. v. Tircuit*, 554 So.2d 878 (Miss.1989); *State ex rel. Chicago, Rock Island & Pac. R.R. Co. v. Riederer*, 454 S.W.2d 36 (Mo.1970); *Vargas v. A.H. Bull S.S. Co.*, 25 N.J. 293, 135 A.2d 857 (1957), *cert. denied*, 355 U.S. 958, 78 S.Ct. 545, 2 L.Ed.2d 534 (1958); *State ex rel. Southern Pac. Transp. Co. v. Frost*, 102 N.M. 369, 695 P.2d 1318 (1985); *Williams v. Seaboard Air Line R.R. Co.*, 9 A.D.2d 268, 193 N.Y.S.2d 588 (1959); *Atchison, Topeka & Santa Fe Ry. Co. v. District Court*, 298 P.2d 427 (Okla.), *cert. denied*, 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80 (1956); *Rini v. New York Cent. R.R. Co.*, 429 Pa. 235, 240 A.2d 372 (1968); *Norman v. Norfolk & W. Ry. Co.*, 228 Pa.Super. 319, 323 A.2d 850 (1974). *See* Annot., 60 A.L.R.3d 964 (1974).

In *Gardner*, we pointed out that a number of states had adopted the common law doctrine of *forum non conveniens*, and we discussed the principles set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), stating that the doctrine

"is simply that a court may, in its sound discretion, decline to exercise jurisdiction, to promote the convenience of witnesses and the ends of justice, even when jurisdiction and venue are authorized by the letter of a statute.... *Gilbert*, 330 U.S. [at] 507, 67 S.Ct. [at] 842, 91 L.Ed. [at] 1062.... *See also Black's Law Dictionary* 589 (5th ed. 1979). The common-law principle of *forum non conveniens* is applicable only if, as a threshold matter, the forum court has jurisdiction and venue is proper under the statute. *Gilbert*, 330 U.S. at 504, 67 S.Ct. at 841, 91 L.Ed. at 1060. 'In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them.' *Id.* at 506–07, 67 S.Ct. at 842, 91 L.Ed. at 1061." 179 W.Va. at 729, 372 S.E.2d at 791. (Citations omitted).

Following the *Gilbert* analysis, we identified two general considerations upon which the doctrine rests—the interest of the public in the prompt and efficient administration of justice and the private interests of the parties to the litigation. Both of these interests were discussed at some length in *Gardner*, again using the *Gilbert* matrix:

"Included among the private interests of the litigants are: the relative ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; the possibility of a view of property, if such a view would be appropriate in the action; the enforcibility [sic] of any judgment; and all other practical problems that make a trial of a case easy, expeditious and inexpensive.

"The public interests include the relative congestion of the respective courts' dockets; the burden of imposing jury duty upon the citizens of a community which has no or very little relation to the litigation; the local interest in having localized controversies decided at home; and the advantages of conducting a trial

in a forum familiar with the applicable law and of avoiding conflicts of law. *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. at 843, 91 L.Ed. at 1062–63." 179 W.Va. at 729–30, 372 S.E.2d at 791–92.

The various factors set out in *Gilbert* are not exhaustive and were supplemented in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). There, the Supreme Court held that a *forum non conveniens* motion could not be defeated solely because the substantive law was more favorable in the chosen forum than in the alternative forum, although this could be a factor to be considered. The Court acknowledged that customarily the plaintiff's choice of a forum was entitled to great deference, but this preference may be diminished when the plaintiff is a non-resident and the cause of action did not arise in the forum state. Finally, *Piper* also stressed that no one factor was necessarily dispositive in a *forum non conveniens* analysis and that the doctrine had to be applied flexibly and on a case-by-case basis.

A number of courts have recognized general factors, similar to those set out in *Gilbert,* to be considered in applying their *forum non conveniens* doctrine. These courts accept that these considerations are not exhaustive and that the doctrine must be applied flexibly and on a case-by-case basis. They also recognize, as did the United States Supreme Court in *Gilbert* and *Piper,* that ultimately the decision to apply or to reject the *forum non conveniens* doctrine in a particular case rests within the sound discretion of the trial court. *E.g., Jordan v. Delaware & Hudson Ry. Co.,* 590 F.Supp. 997 (E.D.Pa.1984); *Mobley v. Southern Ry. Co., supra; Adams v. Seaboard Coast Line R.R. Co.,* 224 So.2d 797 (Fla.App.1969); *Bell v. Louisville & Nashville R.R. Co.,* 106 Ill.2d 135, 88 Ill. Dec. 69, 478 N.E.2d 384 (1985); *Wieser v. Missouri Pac. R.R. Co., supra; Johnson v. Chicago, Burlington & Quincy R.R. Co.,* 243 Minn. 58, 66 N.W.2d 763 (1954); *Missouri Pac. R.R. Co. v. Tircuit, supra; Besse v. Missouri Pac. R.R. Co.,* 721 S.W.2d 740 (Mo.1986); *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987); *Norfolk & W. Ry. Co. v. Williams,* 239 Va. 390, 389 S.E.2d 714 (1990).

As the phrase indicates, the common law doctrine of *forum non conveniens* is a concept that has been formulated by the courts as a part of their common law powers to provide for the efficient administration of justice, a point that was implicit in *Gilbert* and its companion case, *Koster v. (American) Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).[5] We have spoken about our common law powers in *Morningstar v. Black & Decker Manufacturing Co.,* 162 W.Va. 857, 253 S.E.2d 666 (1979), where we indicated that we could alter or adopt common law principles to accommodate the changing needs of our society.[6] *See also State ex rel. Atkinson v. Wilson,* 175 W.Va. 352, 332 S.E.2d 807 (1984); *Smith v. West Virginia State Bd. of Educ.,* 170 W.Va. 593, 295 S.E.2d 680 (1982).

5. In note 13, in part, of *Piper Aircraft Co. v. Reyno,* 454 U.S. at 248, 102 S.Ct. at 262, 70 L.Ed.2d at 431, the United States Supreme Court stated:

"The doctrine of *forum non conveniens* has a long history. It originated in Scotland, see Braucher, The Inconvenient Federal Forum, 60 Harv.L.Rev. 908, 909–911 (1947), and became part of the common law of many States, see *id.,* at 911–912; Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Colum.L.Rev. 1 (1929). ·The doctrine was also frequently applied in federal admiralty actions. See, *e.g., Canada Malting Co. v. Paterson Steamships, Ltd.* [285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932) ]; see also Bickel, The Doctrine of Forum Non Conveniens As Applied in the Federal Courts in Matters of Admiralty, 35 Cornell L.Q. 12 (1945). In *Williams v. Green Bay & Western R. Co.,* 326 U.S. 549 [66 S.Ct. 284, 90 L.Ed. 311] (1946), the Court first indicated that motions to dismiss on grounds of *forum non conveniens* could be made in federal diversity actions. The doctrine became firmly established when *Gilbert* and *Koster* were decided one year later."

6. Syllabus Point 2 of *Morningstar* states: "Article VIII, Section 13 of the West Virginia Constitution and W.Va.Code, 2–1–1, were not intended to operate as a bar to this Court's evolution of common law principles, including its historic power to alter or amend the common law."

■ We therefore conclude that the common law doctrine of *forum non conveniens* is available to courts of record in this State. The doctrine accords a preference to the plaintiff's choice of forum, but the defendant may overcome this preference by demonstrating that the forum has only a slight nexus to the subject matter of the suit and that another available forum exists which would enable the case to be tried substantially more inexpensively and expeditiously. To the extent that *Gardner* declined to apply this doctrine, it is overruled.

In this particular case, we address several specific problems that may exist. First, a key consideration is the residence of the plaintiff, since the doctrine historically accords preference to the choice of the resident plaintiff. We also recognize that W.Va.Code, 56-9-1 (1939), which provides a mechanism for transfer of cases within the circuit courts of this State,[7] operates as an intercircuit *forum non conveniens*. However, this procedure is not automatic and is subject to the approval of the chief justice of this Court who, by virtue of Article VIII, Section 3 of the West Virginia Constitution, serves as "the administrative head of all courts." Moreover, this same section enables the chief justice to assign a judge "from one circuit to another," so that it may be more expeditious to bring in a judge rather than transfer the case to another circuit.

■ It will also be important for the trial court in considering whether to apply the doctrine of *forum non conveniens* to recognize that the doctrine is not triggered if there is no other available forum. Courts have recognized that unavailability is brought about if the statute of limitations precludes the institution of suit in another forum. *E.g., Miller v. United Technologies Corp.,* 40 Conn.Supp. 457, 515 A.2d 390 (1986); *Harry David Zutz, Ins., Inc. v. H.M.S. Assocs., Ltd.,* 360 A.2d 160 (Del.Super.1976); *Satkowiak v. Chesapeake & O. Ry. Co.,* 106 Ill.2d 224, 88 Ill.Dec. 55, 478 N.E.2d 370 (1985); *Johnson v. G.D. Searle & Co.,* 314 Md. 521, 552 A.2d 29 (1989); *Anderson v. Great Lake Dredge & Dock Co.,* 411 Mich. 619, 309 N.W.2d 539 (1981); *Missouri Pac. R.R. Co. v. Tircuit, supra; Besse v. Missouri Pac. R.R. Co., supra; Civic S. Factors Corp. v. Bonat,* 65 N.J. 329, 322 A.2d 436 (1974); *Beatrice Foods Co. v. Proctor & Schwartz, Inc.,* 309 Pa.Super. 351, 455 A.2d 646 (1982). *See* Annot., 57 A.L.R.4th 973 (1987). Most of the jurisdictions cited above have recognized that in order to avoid the statute of limitations problem, the trial court can, as a condition of dismissing a case, require the defendant to agree not to raise the defense of the statute of limitations when suit is filed in the alternative jurisdiction.

Several courts have taken the view in FELA actions that under *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), the statute of limitations is tolled for the period during which the case is pending in state court. *See Missouri Pac. R.R. Co. v. Tircuit, supra; Turnbow v. Southern Ry. Co.,* 768 S.W.2d 556 (Mo.1989). The precise language of *Burnett* states that "when a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process and plaintiff's action is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit." 380 U.S. at 434-35, 85 S.Ct. at 1058, 13 L.Ed.2d at 949.

However, as the Supreme Court of Missouri observed in note 1 of *Turnbow:* "The case law applying *Burnett* is scant.... There seems to be a split of authority on

---

7. W.Va.Code, 56-9-1, provides:

"A circuit court, or any court of limited jurisdiction established pursuant to the provisions of section 1, article VIII of the Constitution of this State, wherein an action, suit, motion or other civil proceeding is pending, or the judge thereof in vacation, may on the motion of any party, after ten days' notice to the adverse party or his attorney, and for good cause shown, order such action, suit, motion or other civil proceeding to be re-moved, if pending in a circuit court, to any other circuit court, and if pending in any court of limited jurisdiction hereinbefore mentioned to the circuit court of that county: Provided, that the judge of such other circuit court in a case of removal from one circuit to another may decline to hear said cause, if, in his opinion, the demands and requirements of his office render it improper or inconvenient for him to do so."

the issue of whether *Burnett* applies to cases originally dismissed for reasons other than venue." 768 S.W.2d at 557.[8] Furthermore, the action in *Burnett* was not dismissed under the *forum non conveniens* doctrine, but, rather, because the plaintiff had filed suit in the wrong county. We decline to decide whether *Burnett* is applicable to the cases involved here. Even if we were to make such a determination, it would not bind the court in the alternative jurisdiction, which might well decide that *Burnett* is not applicable.

Consequently, we conclude that the appropriate practice, where there is a possible statute of limitations problem in the alternative jurisdiction, is to require the defendant to agree not to raise the statute of limitations defense as a condition for the dismissal of the case under *forum non conveniens*.

■ As a final consideration, we touch upon the propriety of an original writ of prohibition in this case. In Syllabus Point 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979), we recognized that this discretionary writ may be used even "when a court is not acting in excess of its jurisdiction[.]"[9] In this situation, we look to the magnitude of the legal issue which has been ruled on by the trial court. Where resolution of the issue may be dispositive of the case, we may grant the writ in order to achieve an "over-all economy of effort and money among litigants, lawyers and courts[.]" Syllabus Point 1, in part, *Hinkle v. Black, supra.* We summarized *Hinkle*'s principal teaching in *Naum v. Halbritter*, 172 W.Va. 610, 612, 309 S.E.2d 109, 111–12 (1983):

"[W]e took that occasion to outline the circumstances in which a writ of prohibition was appropriate. First, other remedies such as appeal must be inadequate. Second, the writ should not unduly interfere with efficient judicial administration. Third, the writ must be sought in good faith. Finally, it should be addressed to a clear legal issue."

In this case, a significant legal issue has been raised for reconsideration which, in light of *Gardner*, the trial court could not have anticipated. We believe prohibition is appropriate in this case under *Hinkle v. Black*. Consequently, we issue the writ as moulded, committing further action under the doctrine of *forum non conveniens* as set out herein to the sound discretion of the trial court.

Writ granted as moulded.

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and .money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

---

**8.** *Turnbow* discusses two cases where *Burnett* was not applied. *Stine v. Kansas City Terminal Ry. Co.,* 564 S.W.2d 619 (Mo.App.1978); *Smith v. Seaboard Sys. R.R., Inc.,* 179 Ga.App. 822, 348 S.E.2d 97 (1986). It also discussed three cases where *Burnett* was applied. *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel,* 614 F.2d 1051, 56 A.L.R.Fed. 534 (5th Cir.), *cert. denied,* 449 U.S. 901, 101 S.Ct. 272, 66 L.Ed.2d 131 (1980); *Fox v. Eaton Corp.,* 615 F.2d 716 (6th Cir.1980), *cert. denied,* 450 U.S. 935, 101 S.Ct. 1401, 67 L.Ed.2d 371 (1981); *Reynolds v. Logan Charter Serv., Inc.,* 565 F.Supp. 84 (N.D.Miss.1983).

**9.** Syllabus Point 1 of *Hinkle* states: