454 S.E.2d 46

STATE of West Virginia ex rel.
Charles S. SMITH, Relator,

v.

Honorable Elliott E. MAYNARD, Special
Judge of the Circuit Court of Kanawha
County, and Cleve Benedict, Respondents.

No. 22494.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 1, 1994.

Decided Nov. 18, 1994.

See also, 447 S.E.2d 255.

Joseph R. Goodwin, Goodwin & Goodwin, Charleston, Rebecca A. Baitty, Lutz, Webb, Partridge, Bobo & Baitty, Sarasota, FL, for the relator.

Michael W. Carey, Phillip B. Scott, Pamela C. Deem, Carey, Hill & Scott, Charleston, for the respondent Cleve Benedict.

CLECKLEY, Justice:

In this original proceeding for a writ of prohibition, we are asked to determine whether the respondent judge, the Honorable Elliott E. Maynard, of the Circuit Court of Mingo County, erred in transferring a civil action by order dated June 23, 1994, from Mingo to Kanawha County. The relator, Charles S. Smith, argues that, if we find the civil action properly was transferred to Kanawha County, it was error to administratively assign the respondent judge to sit as a Special Judge of the Circuit Court of Kanawha County to preside over the action.

## I.

### FACTS

The relator contends that the underlying civil action was filed on September 8, 1993, in the Circuit Court of Mingo County, against the defendant below and a respondent herein, Cleve Benedict. The complaint alleges

that the defendant made libelous statements against the relator in a series of commercials that were broadcast in Mingo County and throughout the State of West Virginia. The commercials were a part of a political campaign initiated by the defendant in his bid to unseat the incumbent governor, the Honorable Gaston Caperton, in the 1992 gubernatorial race.[1] At the time the commercials were broadcast, the relator was the Chairman of the State Democratic Party and a partner in an accounting firm.

The relator asserts that, at a proceeding held before the Circuit Court of Mingo County on March 7, 1994, the respondent judge *sua sponte* raised the issue of whether Mingo County was the proper forum for the litigation.[2] After this proceeding, on March 24, 1994, the defendant filed a motion with the Mingo County Circuit Court to transfer the case to Kanawha County.

The respondent judge held a hearing on the motion on May 16, 1994. At this hearing, the respondent judge called the case a "hot potato," but, in essence, said that in spite of the nature of the case, the transfer issue must be evaluated on the facts. Upon reviewing the facts, the respondent judge concluded that he was unaware of any witnesses living in Mingo County and it was much more convenient for the ones he was aware of to appear in Kanawha County. In addi-

tion, the respondent judge found that none of the parties live in Mingo County. The relator resides in Fayette County, which is contiguous to Kanawha County, and his principal place of business is in Kanawha County. The defendant resides in Greenbrier County, and he maintains that the Circuit Court of Kanawha County is over one hour closer to where he lives than is the Circuit Court of Mingo County.

Moreover, the respondent judge found that it was a five-hour round trip from Kanawha County to Mingo County, and all the lawyers practice in Kanawha County. The respondent judge stated that Kanawha County would be less expensive to the parties. The respondent judge concluded "[c]onsidering every factor in this case, [Kanawha County] would be a more convenient forum, ... the defendant has shown good cause for a transfer of this case.... There were commercials that were complained of that were broadcast in this county and were seen by residents of this county, so there is a nexus here, but it is a slight nexus."

The relator's counsel sent a letter dated May 27, 1994, to the respondent judge to make the relator's position clear that he opposed the transfer. By order dated June 23, 1994, the respondent judge directed the civil action be transferred from the Circuit Court

1. For instance, a radio commercial that was broadcast stated, in part:
    "Gaston Caperton would like you to think he's cleaned up state government. But he hasn't even tried.
    "Instead, he's given state money sweetheart deals to his political lieutenants. Example? Chuck Smith, Caperton campaigner and later party chairman, got a $51,000 accounting contract even though he was the highest bidder, not the lowest."

2. The respondent judge stated, in relevant part:
    "Before I get to findings and rulings, I think there's a couple of things here we need to take head on. One of them is the forum for this litigation. The plaintiff chose the forum and the plaintiff has adverted in his argument to some reasons for the choice of this forum. I think we would all have to be deaf, dumb and blind not to know that we're sitting here today in a predominantly Democratic county with a long history of Democratic majority, and that the defendant is a prominent Republican and he's been sued in a county where there are

very few Republicans and he has sitting today as the Judge in this case a Democratic Judge who has to run in a state where we still have partisan elections for Judges.... I don't know why this forum was chosen. I would prefer that it had not been chosen, quite frankly. I have enough to do without this case. I'd just as soon not have the case. I would rather it be in Kanawha County, which would be a lot more convenient for everybody in here. Everybody in here, you all are from Charleston, and that's where this case ought to be, in my view. I didn't pick the forum, but it's here and it's apparently going to get some press attention which is another thing I'm not crazy about, but there's nothing I can do about that. The only thing I can do with this case is assure everybody in it that I'm going to do my dead level best to approach this as fairly and even handedly as I can....
    "I don't know if the plaintiff chose this jurisdiction thinking he'd get home cooking.... Let me assure both sides, gentlemen, none of that is going to happen here."

of Mingo County to the Circuit Court of Kanawha County.

By letter dated June 24, 1994, the respondent judge wrote the Chief Justice of this Court, the Honorable William T. Brotherton, Jr., requesting a determination of whether the transfer of the case to Kanawha County was appropriate and whether he should "continue to preside over the litigation" in Kanawha County. An administrative order from this Court was entered on July 5, 1994, whereas upon review, the Chief Justice affirmed the decision to transfer the case, and the Chief Justice determined that the respondent judge should continue to preside over the matter.[3] The relator then filed a petition for a writ of prohibition with this Court on September 12, 1994.

## II.

### CRITERIA FOR AWARDING A WRIT OF PROHIBITION

■ Initially, the relator asserts that a writ of prohibition is the appropriate method to challenge the transfer. In *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), we addressed when a rule to show cause for a writ of prohibition should be awarded. We said in Syllabus Point 1:

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate

which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

In *Hinkle,* we concluded that a writ of prohibition was an appropriate method to challenge the trial court's decision to transfer several related civil actions from Wood County to an adjacent county where other related actions were pending. The petitioners argued that they were entitled to their choice of forum and they believed a Wood County jury would give them a higher award. Considering the petitioners' argument of a higher award as true, we found the petitioners' remedy on appeal would be "wholly theoretical and not at all practical." 164 W.Va. at 120, 262 S.E.2d at 749. We explained that when lawyers receive a good award in a case, few of them are willing to risk losing the award in hopes of getting a better one. 164 W.Va. at 120, 262 S.E.2d at 749.

Ultimately, in *Hinkle,* we decided that, in spite of the petitioners' choice of forum, the transfer was appropriate because the disadvantage to the petitioners was speculative "while the advantages of consolidation in terms of both economy and consistency" of transferring the actions were substantial. 164 W.Va. at 125, 262 S.E.2d at 751. As to the standard of review of a trial court's decision to transfer a case, we stated in Syllabus Point 3 of *Hinkle:* "Where a trial court does not abuse its discretion in transferring cases under *W.Va.Code,* 56–9–1 [1939] this Court will not prohibit such transfer."[4] Finding the trial court did not abuse its discretion in *Hinkle,* we denied the petitioners' request for a writ of prohibition. Similarly, in the present case, we now must decide whether

---

3. The Chief Justice of this Court has the authority to assign a judge to preside over a case in another county pursuant to Section 3 of Article VIII of the West Virginia Constitution. Section 3 states, in relevant part:

"The [Supreme Court of Appeals] shall have general supervisory control over all intermediate appellate courts, circuit courts and magistrate courts. The chief justice shall be the administrative head of all the courts. He may assign a judge from one intermediate appellate court to another, from one circuit court to

another, or from one magistrate court to another, for temporary service."

4. In relevant part, W.Va.Code, 56–9–1, provides:

"A circuit court . . . wherein an action, suit, motion or other civil proceeding is pending . . . may on the motion of any party, after ten days' notice to the adverse party or his attorney, and for good cause shown, order such action, suit, motion or other civil proceeding to be removed, if pending in a circuit court, to any other circuit court[.]"

the trial court abused its discretion by transferring the action to Kanawha County.

### III.

### PROPRIETY OF THE TRANSFER

In their briefs, the parties argue that this case is controlled by the *forum non conveniens* criteria we set forth in *Norfolk & Western Railway Co. v. Tsapis,* 184 W.Va. 231, 400 S.E.2d 239 (1990), and other related cases. In *Tsapis,* the Norfolk and Western Railway (N & W) filed an original proceeding in prohibition requesting us to reconsider our previous holding in *Gardner v. Norfolk & Western Railway Co.,* 179 W.Va. 724, 372 S.E.2d 786 (1988), *cert. denied,* 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989). In the Syllabus of *Gardner,* we said the doctrine of *forum non conveniens* does not apply to actions brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60.

To understand the *Tsapis* case, it first is necessary to explain the facts of *Gardner.* In *Gardner,* the plaintiffs brought suit against N & W in Brooke County, West Virginia. All of the plaintiffs claimed that they suffered either traumatic injuries or hearing losses while working for N & W. However, none of the plaintiffs alleged they were injured or exposed to noise in Brooke County. The plaintiffs brought suit in Brooke County because that is where N & W operated one of its lines and actions may be brought under FELA where a defendant does business. *See* 45 U.S.C. § 56 (1948).

N & W moved to dismiss the action for *forum non conveniens.* The circuit court granted N & W's motion for actions brought by plaintiffs who were nonresidents of West Virginia at the time their suits were filed, but the circuit court denied the motion for suits filed by residents of West Virginia. The circuit court also denied N & W's motion, under W.Va.Code, 56–9–1 (1939), to transfer the actions brought by West Virginia residents to the counties where they resided. On certified questions, we held the doctrine of *forum non conveniens* and W.Va.Code, 56–9–1, are not applicable to FELA actions

in West Virginia. Therefore, we remanded the case to the circuit court with directions that all the actions should proceed in Brooke County.

In *Tsapis,* N & W asserted that more than 800 additional claims were brought against it in Brooke County since *Gardner.* N & W filed motions with the circuit court to dismiss the nonresident plaintiffs' actions and transfer certain resident plaintiffs' actions, or to certify additional questions to this Court. The circuit court denied all the motions. N & W then sought a writ of prohibition asking us to reconsider our decision in *Gardner.* Upon review, we reversed *Gardner* to the extent that we set forth in Syllabus Point 3 of *Tsapis,* which states:

> "The common law doctrine of *forum non conveniens* is available to courts of record in this State. The doctrine accords a preference to the plaintiff's choice of forum, but the defendant may overcome this preference by demonstrating that the forum has only a slight nexus to the subject matter of the suit and that another available forum exists which would enable the case to be tried substantially more inexpensively and expeditiously. To the extent that *Gardner v. Norfolk & Western Railway Co.,* 179 W.Va. 724, 372 S.E.2d 786 (1988), *cert. denied,* 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193, (1989), declined to apply this doctrine, it is overruled."

In addition, we said in *Tsapis* that W.Va. Code, 56–9–1, "provides a mechanism for [the] transfer of cases within the circuit courts of this State, [and] operates as an intercircuit *forum non conveniens.*" 184 W.Va. at 236, 400 S.E.2d at 244. However, we find the present case is distinguishable from *Tsapis* and *Gardner* because the present case is controlled by W.Va.Code, 56–1–1(b) (1986), not W.Va.Code, 56–9–1.

In deciding this matter, it is essential to distinguish between W.Va.Code, 56–9–1, and W.Va.Code, 56–1–1(b). W.Va.Code, 56–9–1, is a general provision for transferring cases from one circuit court to another circuit court.[5] On the other hand, W.Va.Code, 56–

---

5. For the text of W.Va.Code, 56–9–1, see note 4, *supra.*

1–1, is a general venue statute. Most recently, W.Va.Code, 56–1–1, was amended in 1986, and the legislature added a new subsection (b).[6] This subsection specifically provides:

"Whenever a civil action or proceeding is brought in the county wherein the cause of action arose, under the provisions of subsection (a) of this section, if no defendant resides in such county, a defendant to the action or proceeding may move the court before which the action is pending for a change of venue to a county wherein one or more of the defendants resides, and upon a showing by the moving defendant that the county to which the proposed change of venue would be made would better afford convenience to the parties litigant and the witnesses likely to be called, and if the ends of justice would be better served by such change of venue, the court may grant such motion."

Since the revision, we have not given any detailed analysis or discussion of how subsection (b) should be applied. We did mention the amendment to W.Va.Code, 56–1–1, in

*Banner Printing Co. v. Bykota Corp.*, 182 W.Va. 488, 490, 388 S.E.2d 844, 846 (1989), where we said:

"[W.Va.Code, 56–1–1] consolidated and slightly modified two previous venue statutes, *W.Va.Code*, 56–1–1 [1927], and *W.Va. Code*, 56–1–2 [1927].

"*West Virginia Code*, 56–1–1, as in effect prior to the 1986 amendments, provided for venue based on the location of the defendant. . . .

\* \* \* \* \* \*

"The former *W.Va.Code*, 56–1–2, unlike the former *W.Va.Code*, 56–1–1, provided for venue under certain circumstances in the county where the cause of action arose. . . .

"As previously indicated, after the 1986 amendments, it was provided in *W.Va. Code*, 56–1–1, that, except where otherwise specifically provided, a cause of action could be brought in any county, '(1) Wherein any of the defendants reside or the cause of action arose.' " [7]

---

6. The previous version of W.Va.Code, 56–1–1 (1927), contained subsections (a) through (g). In the 1986 version, these subsections were revised and placed in subsection (a) numbers (1) through (7). Subsection (a) now provides:

"(a) Any civil action or other proceeding, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:

"(1) Wherein any of the defendants may reside or the cause of action arose, except that an action of ejectment or unlawful detainer must be brought in the county wherein the land sought to be recovered or some part thereof, is; or

"(2) If a corporation be a defendant, wherein its principal office is, or wherein its mayor, president or other chief officer resides; or if its principal office be not in this state, and its mayor, president or other chief officer do not reside therein, wherein it does business; or if it be a corporation organized under the laws of this state, which has its principal office located outside of this state, and which has no office or place of business within the state, the circuit court of the county in which the plaintiff resides or the circuit court of the county in which the seat of state government is located shall have jurisdiction of all actions at law or suits in equity against such corporation, where the cause of action arose in this state or grew out of the rights of stockholders with respect to corporate management; or

"(3) If it be to recover land or subject it to a debt, wherein such land or any part thereof may be; or

"(4) If it be against one or more nonresidents of the state, wherein any one of them may be found and served with process, or may have estate or debts due him or them; or

"(5) If it be to recover a loss under any policy of insurance, upon either property, life or health, or against injury to a person, wherein the property insured was situated either at the date of the policy or at the time when the right of action accrued; or the person insured had a legal residence at the date of his death or at the time when the right of action accrued; or

"(6) If it be on behalf of the state in the name of the attorney general or otherwise, wherein the seat of government is; or

"(7) If a judge of a circuit be interested in a case which, but for such interest, would be proper for the jurisdiction of his court, the action or suit may be brought in any county in an adjoining circuit."

7. For the 1986 version of W.Va.Code, 56–1–1(a), see note 6, *supra*. W.Va.Code, 56–1–2 (1923), which was repealed by 1986 W.Va.Acts ch. 170, provided:

"An action, suit or proceeding may be brought in any county wherein the cause of action, or any part thereof, arose, although none of the defendants reside therein, in the following instances:

We also found in note 1 of *Banner*, 182 W.Va. at 491, 388 S.E.2d at 847, that, under the 1986 version, if suit was brought in a county where the cause of action arose, a non-corporate defendant no longer needed to be served in that county.[8]

We referred generally to subsection (b) of W.Va.Code, 56–1–1, in note 10 of *Gardner*, 179 W.Va. at 730, 372 S.E.2d at 792, and we concluded that it did not apply to the case because venue "was not based upon where the cause of action arose but upon where the defendant was doing business." We reaffirm this conclusion. By its explicit terms, W.Va. Code, 56–1–1(b), only applies to a civil action that is brought in the county where "the cause of action arose," and, as was discussed earlier, none of the plaintiffs in *Gardner* alleged they were injured or exposed to noise in Brooke County where the suit was brought.

■ On the other hand, if a suit is brought in the county where "the cause of action arose" and if none of the defendants reside in that county, W.Va.Code, 56–1–1(b), permits a defendant to move the circuit court to transfer the case to a county *"wherein one or more of the defendants reside*[.]" (Emphasis added). For the circuit court to grant the motion, a defendant must demonstrate that the proposed county "would better afford convenience to the parties litigant and the witnesses likely to be called, and if the ends of justice would be better served by such change[.]" W.Va.Code, 56–1–1(b).

■ We believe it is necessary to answer the question whether a circuit court should exercise its discretion to transfer cases in light of our decisions interpreting W.Va. Code, 56–9–1, or whether W.Va.Code, 56–1–1(b), has superseded and removed those cases as guiding precedents. We hold that W.Va.Code, 56–1–1(b), exclusively controls a transfer decision where its prerequisites have been met; namely, the forum selected is where the cause of action arose, and the defendant resides in another county and requests the case be transferred to that county. In other words, where W.Va.Code, 56–1–1(b), applies, its explicit provisions render inapplicable the doctrine of *forum non conveniens.* As a consequence, to the extent that the West Virginia doctrine of *forum non conveniens* has survived this new statutory enactment, it applies only where W.Va.Code, 56–1–1(b), does not apply.[9]

■ By enacting W.Va.Code, 56–1–1(b), the legislature granted to the circuit courts of this State broader discretion than was permissible under the old rule of *forum non conveniens.* Thus, in effect, it gave the circuit court some discretion to decide the choice of forum, a prerogative which previously was placed in the hands of the plaintiff. Under W.Va.Code, 56–1–1(b), the "plaintiff's choice [of forum] is no longer the dominant factor that it was prior to [the] adoption of [this section]."[10] *Quoting* and *see generally* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3848 at 379–80 (2d ed.1986).

Our interpretation of W.Va.Code, 56–1–1(b), is similar to the analysis the United

"(a) When the defendant, or if more than one defendant, one or more of the defendants, is a corporation;

"(b) When the defendant, or if more than one defendant, one or more of the defendants, are served in such county with process or notice commencing such action, suit or proceeding."

**8.** Note 1 of *Banner* specifically provides, in part:

"In making the 1986 amendments, it appears that the Legislature substantially modified the language of subsection 'b' of *W.Va. Code,* 56–1–2, which deals with venue against non-corporate defendants and incorporated the new language in *W.Va.Code,* 56–1–1. Under the prior language, an action against a non-corporate defendant could be brought in

the county where the cause of action arose only if the defendant was served in that county. The new language apparently does not contain that limitation." 182 W.Va. at 491, 388 S.E.2d at 847.

**9.** We leave open for future development whether W.Va.Code, 56–1–1(b), precludes application of *forum non conveniens* where a "transfer" is sought to another county in West Virginia but W.Va.Code, 56–1–1(b) does not apply. This issue was not briefed or argued in this Court and elaborate analysis would be required for its resolution.

**10.** The plaintiff's choice of a forum may be a relevant factor; however, it is not a dispositive factor under *W.Va.Code, 56–1–1(b).*

States Supreme Court gave 28 U.S.C. § 1404 (1948), a federal venue statute.[11] In *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789, 793 (1955), the Supreme Court found that *forum non conveniens* is different than Section 1404(a) because "[t]he harshest result of the application of the old doctrine of *forum non conveniens*, dismissal of the action, was eliminated by the provisions in [Section] 1404(a) for transfer." Therefore, the Supreme Court concluded:

> "When Congress adopted § 1404(a), it intended to do more than just codify the existing law on *forum non conveniens*.... Congress, in writing [Section] 1404(a), which was an entirely new section, was revising as well as codifying.... When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed

or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." 349 U.S. at 32, 75 S.Ct. at 546, 99 L.Ed. at 793. (Citation omitted).

*See also American Dredging Co. v. Miller*, — U.S. —, —, 114 S.Ct. 981, 986, 127 L.Ed.2d 285, 294 (1994) (where in note 2 the Supreme Court said that under Section 1404(a) " '[d]istrict courts were given more discretion to transfer ... than they had to dismiss on grounds of *forum non conveniens*.' *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419, 434 (1981). As a consequence, the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad").

W.Va.Code, 56–1–1, was enacted after our decision in *Hinkle*, 164 W.Va. 112, 262 S.E.2d 744 (1979). Without giving 28 U.S.C. § 1404 the analysis we give it in this opinion, we adopted the doctrine of *forum non conveniens* in note 13 of *Hinkle*, 164 W.Va. at 124, 262 S.E.2d at 751.[12] We may "assume that

---

**11.** The criteria under 28 U.S.C. § 1404(a) is very similar to the criteria under W.Va.Code, 56–1–1(b). 28 U.S.C. § 1404(a) provides: *"For the convenience of parties and witnesses, in the interest of justice*, a district court may transfer any civil action to any other district or division where it might have been brought."* (Emphasis added). W.Va.Code, 56–1–1(b), also provides venue may be changed if the defendant shows the change *"would better afford convenience to the parties litigant and the witnesses likely to be called, and if the ends of justice would better be served*[.]"* (Emphasis added). The main differences between the statutes is that W.Va.Code, 56–1–1(b), is limited to specific circumstances. First, it must involve a civil action brought in the county where the cause of action arose. Second, the defendant must reside in a county other than the one where the cause of action is brought. Third, the defendant must make the motion to change the venue. Fourth, the change must be to the county where the defendant resides. None of these circumstances are stated in 28 U.S.C. § 1404(a). However, these differences do not resolve the issue of whether the "convenience" and "ends of justice" factors under W.Va.Code, 56–1–1(b), encompass the doctrine of *forum non conveniens*.

Except for some semantical differences, the factors under the two statutes are identical. Therefore, we find that an examination of the way the United States Supreme Court has dealt with these factors is useful in determining the

application of the factors in W.Va.Code, 56–1–1(b).

28 U.S.C. § 1404(a) was adopted one year after the United States Supreme Court case of *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Gilbert* is a case we relied heavily upon in *Tsapis, supra*, to explain *forum non conveniens*, and, subsequently, we concluded in Syllabus Point 3 of *Tsapis* that the "doctrine of *forum non conveniens* is available to courts of record" in West Virginia. We also said the doctrine applied to W.Va.Code, 56–9–1, situations. 184 W.Va. at 236, 400 S.E.2d at 244. Similar to what we are deciding today, the United States Supreme Court has not applied *forum non conveniens* to Section 1404(a) cases.

**12.** Note 13 of *Hinkle* provides:

> "When the United States Supreme Court considered the principle of *forum non conveniens* they concluded that 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 [, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062] (1947). However, notwithstanding a policy permitting a plaintiff to choose his forum, the Court was willing to balance against the plaintiff's choice 'all other practical problems that make trial of a case easy, expeditious and inexpensive.' *Id*. We construe Rule 42(b) *W.Va.RCP* and *Code*, 56–9–1 [1939] as providing, in appropriate cases, a viable counterpart

our elected representatives ... know the law." *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560, 575–76 (1979). Thus, it is logical that the West Virginia legislature was fully aware of this Court's formulation of the *forum non conveniens* doctrine and, in its wisdom, chose to revise it.

■ In reviewing the circuit court's decision to transfer the present case to Kanawha County, we apply the same abuse of discretion standard as we adopted in Syllabus Point 3 of *Hinkle, see* Section II, *supra,* but substitute W.Va.Code, 56–1–1(b), for W.Va. Code, 56–9–1. Therefore, we hold that where a circuit court does not abuse its discretion in transferring cases under W.Va. Code, 56–1–1(b), this Court will not prohibit such transfer.

■ In applying this standard to the present case, there is no dispute that the cause of action arose in Mingo County and the defendant does not reside in Mingo County. Therefore, we conclude W.Va.Code, 56–1–1(b), specifically applies to this case. In addition, we find that the circuit court did not consider whether the case should be transferred to Greenbrier County, where the defendant resides, but, instead, considered the merits of transferring the case to Kanawha County under W.Va.Code, 56–9–1. As indicated, Kanawha County is not an available forum for transfer under W.Va.Code, 56–1–1(b). Thus, we find the circuit court abused its discretion.

We remand this case to the Circuit Court of Mingo County, and, if the defendant so moves, the circuit court must consider whether the case should remain in Mingo County or be transferred to Greenbrier County. In making its determination as to whether a transfer is appropriate, the circuit court should consider the criteria set forth in W.Va.Code, 56–1–1(b), that is, the convenience of the parties and the witnesses, and "if the ends of justice would be better served[.]" In order for this Court to review

the circuit court's decision under the factors listed under W.Va.Code, 56–1–1(b), the circuit court must provide a sufficiently detailed record that shows the basis for its decision. *Cf.* Syllabus Point 4, *Abbott v. Owens–Corning Fiberglas Corp.,* 191 W.Va. 198, 444 S.E.2d 285 (1994) (stating the circuit court must provide an adequate record when applying *forum non conveniens*).

For the foregoing reasons, we grant the writ of prohibition to prevent any further proceedings in the Circuit Court of Kanawha County. This case, therefore, is remanded to the Circuit Court of Mingo County for additional proceedings consistent with this opinion.[13]

Writ granted.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.

WORKMAN, J., deeming herself disqualified, did not participate in the consideration or decision of this case.

---

to 28 *U.S.C.* 1404 [1962]." 164 W.Va. at 124, 262 S.E.2d at 751.

**13.** We find it unnecessary to address the issue of whether the respondent judge should accompany

the case to Kanawha County, as this issue now is mooted by our determination that Kanawha County is not an appropriate forum.