408 S.E.2d 310

**Carole A. LOZINSKI, Plaintiff Below, Appellant,**

v.

**John M. LOZINSKI, Jr., Defendant Below, Appellee.**

**No. 19623.**

Supreme Court of Appeals of West Virginia.

Submitted March 5, 1991.

Decided July 17, 1991.

Richard A. Bush, Bush & Trippel, Parkersburg, for appellant.

C. Blaine Myers, Myers and Zirkovich, Parkersburg, for appellee.

WORKMAN, Justice:

Carole A. Lozinski, the ex-wife of appellee, John M. Lozinski, Jr., appeals from the Wood County Circuit Court ruling which granted her a divorce and child custody but failed to adjudicate the related issues of alimony, child support, property division, or equitable distribution on the grounds that the court lacked *in personam* jurisdiction over appellee. Mrs. Lozinski maintains that the court had personal jurisdiction over Mr. Lozinski pursuant to the West Virginia long-arm statute, W.Va.Code § 56–3–33 (Supp.1991). We reverse the decision of the circuit court on the grounds that the West Virginia long-arm statute may apply to actions when a party violates his duty to support his children, thereby committing a tortious act. Based on the commission of that tort, the long-arm statute is invoked and the West Virginia Secretary of State becomes the duly-authorized agent of the tortfeasor for process purposes.

The parties were married for twenty-two years prior to their separation in December 1988. Four children were born of the marriage, one of whom was emancipated at the time the divorce complaint was filed by Mrs. Lozinski on December 20, 1988. Through the divorce complaint, which was predicated on irreconcilable differences, appellant sought permanent custody of the three minor children of the parties as well as child support, alimony, medical insurance for herself and the children, the former marital domicile of the parties located in Parkersburg, West Virginia, and equitable distribution.

Appellant initially attempted to obtain service against appellee through publication because Mr. Lozinski had relocated to the State of Florida. When appellee failed to enter an appearance in response to service by publication, Mrs. Lozinski filed an amended complaint which contained an additional count premised on the joint ownership of the former marital domicile. Pursuant to the provisions of W.Va.Code § 56–3–33,[1] the West Virginia Secretary of State

---

1. West Virginia Code § 56–3–33, the long-arm statute, provides, in pertinent part, as follows:

   (a) The engaging by a nonresident, or by his duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him, in any circuit court in this State, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this State;

   (1) Transacting any business in this State;

   (2) Contracting to supply services or things in this State;

   (3) Causing tortious injury by an act or omission in this State;

   (4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

   (5) Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use, consume or be affected by the goods in this State: Provided, That he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

   (6) Having an interest in, using or possessing real property in this State; or

accepted service on behalf of Mr. Lozinski with regard to the amended divorce complaint in August 1989. Upon receiving notification that the secretary of state had accepted service on his behalf, appellee filed a special appearance to contest the court's jurisdiction based on his two-prong position that long-arm service is improper in a divorce action and that equitable distribution could not be awarded absent personal service of process.

By order entered December 15, 1989, the circuit court ruled that the West Virginia Secretary of State improperly accepted service on behalf of appellee. The court reasoned that appellant's basis for applying the long-arm statute—appellee's interest in, use of, or possession of West Virginia real property [2]—was procedurally insufficient. The court premised its reasoning on the language of W.Va.Code § 56–3–33(b) which directs that "[w]hen jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him." The court concluded that because the divorce cause of action did not arise from or grow out of appellee's interest in real property, long-arm jurisdiction was improperly invoked under W.Va.Code § 56–3–33.

Following the final hearing before the family law master on January 4, 1990, appellant was awarded a divorce on the grounds of a one-year separation of the parties. Although Mrs. Lozinski was awarded custody of the minor children, the court denied the related relief that she had requested—child support, alimony, equitable distribution, attorney's fees, and court costs—on the grounds that it lacked personal jurisdiction over Mr. Lozinski and accordingly could not rule on these issues.[3]

Through this appeal, appellant seeks to reverse the circuit court's quashing of the long-arm service of process obtained over appellee and the court's overruling of Mrs. Lozinski's exceptions to the family law master's recommendations with respect to denial of child support, alimony, equitable distribution, attorney's fees, and court costs.

This case presents an issue of first impression for this Court—whether the long-arm statute can be utilized to obtain *in personam* jurisdiction over a nonresident defendant in a domestic proceeding. Appellee strenuously argues that the long-arm statute is not a proper vehicle for obtaining personal jurisdiction in a divorce action. We disagree, and find that where child support is an issue, the long-arm statute can be utilized.

The advent and growth of long-arm statutes

> appear to be examples of legislative self-interest. In part they represent attempts by one state to provide a litigation forum for the convenience of its own citizens at the expense of citizens of other states. Nonetheless, most observers have agreed that the statutory trend is a healthy and natural one in a mobile, industrialized society that effectively has reduced the time and rigors of travel.... *[L]ong-arm statutes promote the determination of jurisdictional questions on the basis of the relationship of defendant and the dispute to the forum state....* Finally, by providing a plaintiff with a forum near his home, many injuries can be rectified that simply were uneconomic to litigate under a system that forced the plaintiff to journey to the defendant.

4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1068 at pp. 335–36 (2d ed. 1987) (footnotes omitted and emphasis supplied). Prior to the enactment of the West Virginia long-arm statute in 1978,[4] plain-

---

(7) Contracting to insure any person, property or risk located within this State at the time of contracting.

2. *See* W.Va.Code § 56–3–33(a)(6).

3. *See Marks v. Mitchell,* 90 W.Va. 702, 111 S.E. 763 (1922) (holding that neither child support

nor alimony may be awarded absent personal service of process upon obligor).

4. At least one treatise credits the United States Supreme Court's decision in *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), which upheld the validity of a nonresident mo-

tiffs attempting to hale nonresidents into this state's tribunals were required to successfully clear the "minimum contacts" hurdle first enunciated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Id.* at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. In *International Shoe*, the United States Supreme Court ruled that "due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (*citing Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940), *reh'g denied Milliken v. Meyer*, 312 U.S. 712, 61 S.Ct. 548, 85 L.Ed. 1143 (1941)). Applying the "minimum contacts" rule proved difficult, however, because the standard's inherent vagueness left it subject to continuous and varying interpretation. *See Harman v. Pauley*, 522 F.Supp. 1130, 1136 (S.D.W.Va. 1981) (noting that *International Shoe* "minimum contacts" rule failed to establish any "clear-cut parameters ... and thus courts were left to a case by case determination whenever the issue was presented"). When "minimum contacts" was the prevailing test for exercising extraterritorial jurisdiction, we think it is fair to suggest that many prospective plaintiffs may have been discouraged from instigating a cause of action against a nonresident given the uncertainty of convincing a given tribunal that the requisite "minimum contacts" with the forum state had been established.

While the "traditional notions of fair play and substantial justice" enunciated in *International Shoe* are still present, liberal enactment of long-arm statutes has resulted in extraterritorial jurisdictional issues being resolved more easily pursuant to recognized principles of statutory construc-

tion. *See* Annotation, *Long–Arm Statutes: Obtaining Jurisdiction Over Nonresident Parent in Filiation or Support Proceeding*, 76 A.L.R.3d 708, 714–15 (1977). That is not to say however that mere statutory compliance is sufficient; the operation of any long-arm statute must still conform to the time-honored principles of due process articulated in *International Shoe* and its progeny. *See id.* at 715–16; *Harman*, 522 F.Supp. at 1135–38. As the court noted in *Harman*, "[t]he passage of W.Va.Code § 56–3–33 by the Legislature was intended to permit the courts of this state to exercise personal jurisdiction over a non-resident defendant to the extent permitted by the due process clause." 522 F.Supp. at 1135.

Like most modern long-arm statutes, West Virginia's extraterritorial "reach" of jurisdiction over nonresidents is obtained through what are commonly-referred to as "single-acts." *See Annotation, supra*, at 716; *Harman*, 522 F.Supp. at 1135. It is the commission of any one of a series of statutorily-enumerated acts either within or outside the state that permits the exercise of jurisdiction over nonresidents. Those acts include, *inter alia*, the transaction of business in this state, causing tortious injury in this state, and having an interest in real property in this state. *See* W.Va.Code § 56–3–33(a)(1) to (7) at note 1, *supra*. Appellant has identified each of these three "single-acts" as a basis for extending long-arm jurisdiction over appellee.[5]

Courts that have extended long-arm jurisdiction to family law cases have relied primarily on either the tortious conduct subdivision or the transacting business subdivision of the pertinent long-arm statute. In *Prybolsky v. Prybolsky*, 430 A.2d 804 (Del.Fam.Ct.1981), the court ruled that it had acquired jurisdiction over a nonresident husband by means of the " 'doing

torist statute as spawning the growth of long-arm statutes by "encourag[ing] states to utilize their police powers to enact ... statutes asserting jurisdiction based not only on the operation of automobiles within a state but also on engaging in a variety of other hazardous activities or enterprises." *See* C. Wright & A. Miller, *supra*, § 1068 at 332–33.

5. While the "single-act" initially asserted by appellant was appellee's interest in West Virginia real estate, the former marital property, appellant subsequently asserted the additional "single-acts" of transacting business and causing tortious injury in West Virginia.

business' provision of the Delaware long-arm statute. . . ." *Id.* at 807. Emphasizing that "[m]arriage is a contract and the support and other rights springing from that contract certainly have financial and business implications," the court discussed the importance of litigating domestic issues in the forum which qualifies as the last matrimonial domicile:

> 'Rapid technological developments improving the speed and facility of transportation necessitate an expanded scope of jurisdiction. The inconvenience and hardship experience in requiring resort to a foreign forum, the cost of which could inhibit the plaintiff-spouse from ever bringing any action and financially dilute whatever award the spouse might win, further supports an expanded base of jurisdiction.'
>
> . . . .
>
> '. . . The last matrimonial domicile would seem to be the proper forum where divorce, support and custody cases can be litigated. The existence of a marital domicile in a state has as many consequences as economic activity does . . . and should satisfy due process requirements so as to permit in personam jurisdiction for the award of alimony and child support against a vagrant spouse.'

430 A.2d at 806–07 (quoting *Egbert v. Egbert*, 125 N.J.Super. 171, 309 A.2d 746, 748–49 (1973) (citation omitted)).

■ While this Court finds the *Prybolsky* opinion and the reasoning employed therein instructive, we are inclined to find that long-arm jurisdiction was invoked in this case by appellee's commission of a tortious act. That act, in our opinion, was Mr. Lozinski's failure to support his children following his peregrination to Florida. This Court is not the first tribunal to take the position that a parent's failure to support his children constitutes a tortious act. *See Poindexter v. Willis*, 87 Ill.App.2d 213, 231 N.E.2d 1 (1967); *accord In re Marriage of Highsmith*, 111 Ill.2d 69, 94 Ill.

Dec. 753, 756, 488 N.E.2d 1000, 1003 (1986); *Black v. Rasile*, 113 Mich.App. 601, 318 N.W.2d 475, 476 (1980); *State ex rel. Nelson v. Nelson*, 298 Minn. 438, 441–42, 216 N.W.2d 140, 143 (1974); *In re Custody of Miller*, 86 Wash.2d 712, 548 P.2d 542, 546 (1976); *see also* G. Ratner, *Child Custody in a Federal System*, 62 Mich.L.Rev. 795, 839 (1964).

By defining the term "tortious act" as including any act committed in the state which involved a breach of duty to another and resulted in ascertainable damages, the *Poindexter* court ruled that nonsupport qualified as a tortious act within the meaning of the Illinois long-arm statute. 231 N.E.2d at 3. Those courts which have followed the lead of the *Poindexter* court have similarly concluded that characterizing nonsupport as a "tortious act" does not violate the respective long-arm statute's objective to assert jurisdiction over nonresidents to the extent permitted by due process. *See In re Highsmith*, 94 Ill.Dec. at 756–57, 488 N.E.2d at 1003–04. In response to the due process concerns which routinely surface when long-arm jurisdiction over a nonresident is at issue, courts have frequently cited the state's interest in the support of its resident children as the rationale for upholding such extraterritorial exercises of jurisdiction. *See* Annotation, *supra*, 76 A.L.R.3d at 713. Similarly, this Court believes that the undeniable duty of a parent to support his/her child and the concomitant tort committed by the failure of a parent to fulfill that duty warrants the imposition of long-arm jurisdiction over a nonresident parent in order for this state to protect its minor residents.

Our ruling in this case is consistent with recent legislation which clearly establishes both a statewide and a nationwide trend towards enabling individuals to seek child support from errant ex-spouses or parents who are no longer located in the state. *See, e.g.*, Revised Uniform Reciprocal Enforcement of Support Act, W.Va.Code §§ 48A–7–1 to –41 (1986 & Supp.1990); [6]

---

**6.** Although appellant has reportedly initiated proceedings against appellee pursuant to the Revised Uniform Reciprocal Enforcement of Support Act in the Circuit Court of Broward

County, Florida, those proceedings, even if successfully litigated, cannot resolve the remaining issues of equitable distribution, attorney's fees, and court costs which have yet to be resolved in

W.Va.Code § 48A–6–1(b) (Supp.1990) (in action for establishment of paternity, act of sexual intercourse within state creates jurisdiction in West Virginia courts). Another example of this trend is the enactment of "domestic relations" long-arm statutes specifically drafted to eliminate extraterritorial jurisdictional problems that arise in connection with the support obligations attendant to marriage dissolution. *See, e.g.,* Colo. Rev.Stat. § 13–1–124(1)(e) (1987); Fla.Stat. Ann. § 48–193(1)(e) (West Supp.1991); N.C.Gen.Stat. § 1–75.4(12) (1990). Until the legislature of this state chooses to enact a "domestic relations" long-arm statute which simplifies the jurisdictional dilemma facing an individual such as the appellant who is attempting to obtain personal jurisdiction over a spouse for nonsupport, jurisdiction in such matters is dependent on the commission of one or more of the "single-acts" enumerated in W.Va.Code § 56–3–33.

■ Unlike the circuit court, we do not view the language in W.Va.Code § 56–3–33(b) which requires the underlying cause of action to arise from or grow out of the commission of the "single-act" at issue as prohibiting the exercise of long-arm jurisdiction in this case. Had appellant cited only the "single act" of appellee's interest in West Virginia real estate as her basis for applying the long-arm statute, we might be more inclined to agree with the circuit court. The appellant also alleged, however, that appellee committed a tort within this state by not supporting his children and that appellee had transacted business in this state. Given the fact that the relief requested by appellant in her amended complaint included child support, we find it impossible to conclude that the divorce action did not in some way arise from or grow out of appellee's commission of a tort—his failure to support his children. Accordingly, we find no statutory bar to applying the long-arm statute to permit the exercise of substituted personal service over appellee. When an individual commits a tort by failing to support his children, personal jurisdiction may be obtained over that individual pursuant to the West Virginia long-arm statute provided that the statutory requirements for asserting jurisdiction have been met.

Once a nonresident commits one of the "single-acts" enumerated in W.Va.Code § 56–3–33(a), service of process is obtainable via the secretary of state. The long-arm statute provides that,

> [t]he engaging by a nonresident ... in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him, in any circuit court in this State ... *and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him,* which is served in the manner hereinafter provided, *shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this State[.]*

W.Va.Code § 56–3–33(a) (emphasis supplied). The intent and benefit of any long-arm statute is to permit the secretary of state to accept process on behalf of a nonresident and to view such substituted acceptance as conferring personal jurisdiction over the nonresident. Given the absence of any dispute regarding appellant's compliance with the procedural requisites necessary to permit the West Virginia Secretary of State to accept service on behalf of a nonresident, we hereby determine that the secretary of state's acceptance of service

---

connection with the divorce proceeding initiated in the Circuit Court of Wood County. Moreover, as at least one author has noted, [w]here a husband and wife have maintained their domicile in one state until the time of separation, it is equitable that litigation over economic maintenance ... be within the jurisdiction of that state. The wife should not be required to follow the defendant from state to state in order to obtain support when the dispute could be [sic] equitably be settled in the home state.

Anderson, *Using Long–Arm Jurisdiction to Enforce Marital Obligations,* 42 Miss.L.J. 183, 185 (1971).

on behalf of the nonresident appellee was proper and constituted substituted personal service on appellee. *See* W.Va.Code § 56–3–33(c).[7]

Application of the long-arm statute based on appellee's nonsupport vested the circuit court with the requisite *in personam* jurisdiction necessary to adjudicate the issues of child support, alimony, equitable distribution, attorney's fees, and court costs. Having determined that the circuit court erroneously concluded that it lacked personal jurisdiction over appellee, the decision of the Circuit Court of Wood County is hereby reversed and remanded for further action consistent with this opinion.

Reversed and remanded.

---

**7.** The long-arm statute provides for service of process on nonresidents as follows:

Service shall be made by leaving the original and two copies of both the summons and the complaint with the certificate aforesaid of the clerk thereon [evidencing payment of $100 surety bond], and a fee of five dollars with the secretary of state, or in his office, and such service shall be sufficient upon such nonresident: Provided, That notice of such service and a copy of the summons and complaint shall forthwith be sent by registered or certified mail, return receipt requested, by the secretary of state to the defendant and the defendant's return receipt signed by himself or his duly authorized agent or the registered or certified mail so sent by the secretary of state which is refused by the addressee and which registered or certified mail is returned to the secretary of state, or to his office, showing thereon the stamp of the post-office department that delivery has been refused, shall be appended to the original summons and complaint and filed therewith in the clerk's office of the court from which process issued.

W.Va.Code § 56–3–33(c).