704 S.E.2d 631

Edith NEZAN, in her capacity as personal representative of the Estate of Margaret O'Brien, Plaintiff Below, Appellant,

v.

ARIES TECHNOLOGIES, INC., and Shashi Sanwalka, in his capacity as Legal Representative of the Estate of Aditya Roy Sanwalka, Defendant Below, Appellee.

No. 35495.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2010.

Decided Nov. 17, 2010.

Scott S. Segal, Esq., Mark R. Staun, Esq., Deborah L. McHenry, Esq., Victor S. Woods, Esq., The Segal Law Firm, Charleston, WV, Michael A. Sullivan, Esq., Pro hac vice, Atlanta, GA, for Appellants.

Ted Kanner, Esq., Charleston, WV, Robert D. Finkel, Esq., Pro hac vice, Pittsburgh, PA, for Appellee.

BENJAMIN, Justice:

This appeal arises from the dismissal of a civil action by the Circuit Court of Kanawha County, for lack of personal jurisdiction over the defendant as well as for *forum non conveniens*. After careful review of the pleadings, the record, the briefs and arguments of the parties, we find that the lower court

erred in dismissing the case. Therefore, we reverse and remand this action to the circuit court.

## I.

### PROCEDURAL AND FACTUAL BACKGROUND

The plaintiff below and appellant herein, Edith Nezan, is a resident and citizen of Canada, and is the mother of Margaret O'Brien. She was appointed both in Canada and in West Virginia the representative of her daughter's estate. The defendants below and appellees are Shashi Sanwalka, a Canadian resident and citizen who is the father of Aditya Roy Sanwalka (hereinafter referred to as Roy Sanwalka) and the representative of his son's estate; and Aries Technologies, Inc., a Canadian corporation and part-owner of the airplane [1] that crashed in this case. Roy Sanwalka was the other part-owner of this airplane. Margaret O'Brien and Roy Sanwalka were at the times of their deaths residents and citizens of Canada.

The appellant's claims arise from a crash of the Mooney M20C Ranger on March 16, 2008, in the State of Virginia, 20 miles from the border of West Virginia. Piloting the airplane was Roy Sanwalka, who possessed a Canadian private pilot's license. This license did not include an instrument rating.[2] The sole passenger in the airplane at the time of the crash was Margaret O'Brien, Roy Sanwalka's girlfriend. Both Roy Sanwalka and O'Brien were killed when the airplane crashed in or near the Jefferson National Forest in Atkins, Virginia.

The events leading up to the crash were as follows: On March 14, 2008, Roy Sanwalka and O'Brien left Canada en route to the Bahamas. The airplane stopped in Buffalo, New York. The next day, Roy Sanwalka and O'Brien took off from Buffalo International Airport. While in the air, Roy Sanwalka encountered adverse weather and made an unplanned stop at Yeager Airport, in Kanawha County, West Virginia. Roy Sanwalka and O'Brien stayed overnight in Charleston and returned to Yeager Airport on March 16, 2008. While at the airport, Roy Sanwalka refueled the airplane, and despite not being certified with an instrument rating, filed an Instrument Flight Rules (IFR) [3] plan documenting his intention to travel to Florida on his way to the Bahamas.

The pair took off from Yeager Airport. Eighteen minutes into the trip, while still over West Virginia, Roy Sanwalka contacted air traffic controllers requesting permission to drop to a lower altitude because of airframe icing on his airplane. Eleven minutes after that radio conversation, Roy Sanwalka contacted the air traffic controllers stating his airplane was going down. Shortly after that conversation the airplane in which Roy Sanwalka and O'Brien were traveling crashed in Atkins, Virginia, killing both occupants instantly.

Subsequently, the appellant, Edith Nezan, as Margaret O'Brien's estate, filed a wrongful death action against Roy Sanwalka, through his estate, in Kanawha County Circuit Court. The appellant alleged that "[d]efendant Aries Technologies, Inc., and Roy Sanwalka caused tortious injury by acts and/or omissions in the State of West Virginia, including the acts which directly and proximately caused the death of Margaret O'Brien." The complaint also contained an allegation that the defendants were subject to the jurisdiction of the court "by virtue of defendants' tortious acts and/or omissions in the State of West Virginia that were the direct and proximate cause of the injuries

---

**1.** The airplane was Mooney M20C Ranger, with the tail number C–FRSK.

**2.** An instrument rating is a certification showing that the pilot has the additional training to fly using navigational instruments as well as using his vision alone. A pilot whose license does not include an instrument rating must file a Visual Flight Rule (VFR) plan. A pilot whose license includes an instrument rating can file an Instrument Flight Rules (IFR) plan. Specifically, a

pilot flying without an instrument rating does not have the ability to rely on navigational instruments to fly in clouds and through weather systems or in other conditions that would limit the pilot's visibility.

**3.** See footnote two for the different types of flight plans available to pilots flying a private, noncommercial aircraft.

and death of Margaret O'Brien, as described below."

The complaint further contains an allegation that Roy Sanwalka made a decision while in Charleston, West Virginia, to resume the flight toward the Bahamas in adverse weather despite his knowledge of the airplane's propensity to have difficulty when its wings became iced. This decision resulted in the death of both pilot and passenger.

In regard to Aries Technologies, the complaint made allegations that the corporation is jointly and severally liable for the negligent acts of the pilot under the theory that the airplane was owned by Aries Technologies and that Roy Sanwalka was at all times acting as the agent of the corporation. As such, any negligence on the part of Roy Sanwalka would be imputed to Aries Technologies.

The appellee, Shashi Sanwalka, as the representative of Roy Sanwalka's estate, was personally served in Toronto, Ontario, with a copy of the summons and complaint. Through counsel he filed a motion to dismiss, along with a memorandum of law in support of the motion to dismiss, containing his own affidavit as well as an affidavit from an attorney licensed to practice law in Canada, Bruce Garrow. Also submitted was the preliminary report of the National Transportation Safety Board (NTSB) investigation into the crash that gave rise to this proceeding.

Sanwalka's affidavit confirmed that Aries was owned in part by Roy Sanwalka. The affidavit also stated that Roy Sanwalka's estate was being administered in Canada; that Roy Sanwalka's private pilot's license was obtained in Canada; that neither Shashi Sanwalka nor Roy Sanwalka owned property in West Virginia or regularly engaged in business, solicited business or engaged in any other persistent course of conduct or derived substantial revenues from goods used or consumed or services rendered in this state. Sanwalka also stated that Roy Sanwalka had, to the best of his recollection, never been in West Virginia except for on the final ill-fated trip that gave rise to this action. Likewise, Shashi Sanwalka averred that he had no prior connection to West Virginia.

Canadian attorney Bruce Garrow's affidavit detailed the remedies available to the appellant in Canada, as well as a statement that counsel had already been retained in Canada to pursue a claim under Canadian law. Garrow also concluded that the case could be tried quicker and easier in Canada, because many of the necessary witnesses reside in Canada.

Counsel for Sanwalka accepted service of the Summons and Complaint on behalf of Aries. Counsel then filed a motion to dismiss. Aries relied upon the pleadings and memorandum of law filed by Sanwalka in support of its motion to dismiss the wrongful death action against the Estate of Roy Sanwalka. In addition, the same attorneys represented both Sanwalka and Aries.

Both appellees argued that the case should be dismissed in West Virginia because neither West Virginia's long-arm statute nor notions of federal due process authorized the Circuit Court of Kanawha County to assert jurisdiction over the Canadian corporation or the Canadian citizen, Roy Sanwalka or his estate.

In response to the motions to dismiss by Sanwalka and Aries, the appellant submitted the affidavit of Richard P. Burgess, an aviation consultant who was a certified flight instructor. Burgess opined that had Roy Sanwalka filed a VFR flight plan in accordance with his license, he would have been told by air traffic controllers that this type of flight was not recommended because of the AIRMETS[4] in effect at the time, including a low cloud ceiling, the mountain obscuration and adverse layers of clouds up to 15,000 feet above ground level. At the time of Roy Sanwalka's filing of an IFR flight plan, the weather conditions in West Virginia indicated that the base of the clouds in the sky were at 2,500 feet, with the tops at 15,000 feet, with the freezing level at approximately 4,000 feet.

---

**4.** AIRMET is an abbreviation for the Airmen's Meteorological Information. According to a publication by the Aviation Weather Center in Kansas City, Missouri, an AIRMET advises of weather that may be hazardous to single engine, other light aircraft, and Visual Flight Rule (VFR) pilots.

Burgess also detailed that at some point while Roy Sanwalka was still in West Virginia airspace, he could have returned to Yeager Airport. Instead, he continued his flight until the airplane went down just outside of West Virginia.

By order entered September 16, 2009, the circuit court dismissed the complaint of the appellant. In its order of dismissal, the circuit court first concluded that there was no jurisdiction over the respondents under the West Virginia long-arm statute, as well as insufficient minimum contacts for the court to act even if this state had jurisdiction. The court reasoned that the long-arm statute does not specifically authorize service of process on the administrator, administratrix, executor or executrix of a non-resident, as opposed to the clear specific language in the non-resident motorist long-arm statute [5] and the statute governing non-resident bail bondsmen [6].

The circuit court found that two alternate forums existed in which to bring the claims of the appellant; first, the state of Virginia, where the airplane crash happened; and second, in Canada, where all of the parties reside. The circuit court reasoned that Virginia's wrongful death statute was similar to West Virginia's statute, and that Virginia has a similar long-arm statute for jurisdiction. The lower court's order stated "[t]here can be no question that an act or omission occurred in the state of Virginia, as that is where the airplane crash actually occurred." Thus, under the Virginia long-arm statute, one that the circuit court noted was similar to West Virginia's, the alternate forum of Virginia could exercise jurisdiction over all the parties.

The lower court also found that the cause of action in this case accrued when the airplane piloted by the appellee's decedent crashed in Virginia. The sole contact the appellee's decedent had with West Virginia, according to the circuit court, was the unplanned stop. Once the airplane was refueled, the planned trip to the Bahamas continued. Thus, reasoned the circuit court, Virginia, not West Virginia, is the state where the cause of action accrued.

The lower court's dismissal order also contained findings that even if the West Virginia court had jurisdiction, the appellants did not allege sufficient minimum contacts for the exercise of jurisdiction. The court stated:

> Even viewing all allegations in the Plaintiff's Complaint in the light most favorable to the Plaintiff, the connection of the Defendants to West Virginia, as related to the airplane crash giving rise to the above cause of action, is tenuous at best. Although the decedent Roy Sanwalka landed the airplane at Yeager Airport in Charleston, West Virginia, and then the next day, before taking off, refueled the airplane and filed a flight plan, it is unlikely that these brief and minimal contacts with West Virginia satisfy federal due process. Furthermore, the airplane crash occurred in Virginia, not West Virginia, and thus, Virginia is where the above cause actually accrued. Also, it [is] unlikely that the decedent's brief contact with West Virginia made it foreseeable that he could be haled into court in West Virginia. Thus, under federal due process, and based upon the tenuous contacts of the decedent with West Virginia giving rise to the action, it would be unfair and unjust to require the Defendants to defend the above action in this State.

As a second ground for dismissal of the appellant's complaint, the lower court further found that "[e]ven if this Court does have personal jurisdiction over the Defendants un-

---

5. W.Va.Code § 56–6–31 specifically states, in subparagraph (c) that "a nonresident operating a motor vehicle in this state, either personally or through an agent, is considered acknowledge the appointment of the secretary of state, or as the case may be, his or her automobile insurance company, as his or her agent or attorney-in-fact, or the agent or attorney-in-fact of his or her administrator, administratrix, executor or executrix . . ."

6. W.Va.Code § 56–3–34 in subparagraph (e) states that "[s]ervice of process upon a nonresident defendant shall be made by leaving the original and two copies of both the summons and complaint . . . with the secretary of state . . . and said service shall be sufficient upon the nonresident defendant or, if a natural person, his or her administrator, administratrix, executor or executrix . . ."

der the West Virginia long-arm statute, dismissal of the above action is still proper under the doctrine of *forum non conveniens.*" The circuit court stated that under West Virginia Code § 56–1–1a, a circuit court *shall* decline to exercise jurisdiction under the doctrine of *forum non conveniens* and *shall* stay or dismiss the action, if it finds that in the interest of justice and the convenience of the parties a claim would be more properly heard in another forum, other than in the state. (Emphasis in original). The circuit court's order acknowledged that the plaintiff's choice of forum is entitled to great deference, but "if the plaintiff is a *nonresident* and the cause of action did not arise in this state, this preference may be diminished under West Virginia Code § 56–1–1a(a)." (Emphasis in original).

The appellant filed an appeal to the circuit court's order. On March 4, 2010, this Court accepted the appeal for further consideration.

## II.

### STANDARD OF REVIEW

This appeal deals with three questions; first, whether the circuit court's dismissal of the appellant's complaint for lack of personal jurisdiction was proper; second, whether for the purposes of the State's long-arm statute a personal representative of an estate may be served; and third, whether the lower court's finding that West Virginia was *forum non conveniens* for the adjudication of this wrongful death action was appropriate.

This Court has held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syllabus Point 2, *State Ex Rel McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995).

■ On the issue of *forum non conveniens,* we have held that the standard of review of this Court is an abuse of discretion. We stated as follows in Syllabus Point 3 of *Cannelton Industries, Inc. v. Aetna Cas. & Sur. Co. of America,* 194 W.Va. 186, 460 S.E.2d 1(1994): "A circuit court's decision to invoke the doctrine of forum non conveniens will not be reversed unless it is found that the circuit court abused its discretion."

## III.

### DISCUSSION

#### a. Personal Jurisdiction

■ The circuit court's dismissal of the appellant's action was based in part upon the lack of personal jurisdiction over Roy Sanwalka and Aries Technologies, both Canadian citizens and/or entities, under both our long-arm statute and on grounds of federal due process. After determining that the long-arm statute did not provide a service mechanism for a non-resident estate, the lower court found that the contacts between the state of West Virginia, Roy Sanwalka and Aries Technologies were limited. Thus, it reasoned, an exercise of West Virginia jurisdiction over the Canadian estate and corporation would run afoul of due process protections afforded the non-resident appellees.

■ The circuit court correctly applied a two-step analysis of whether there was jurisdiction in West Virginia for this wrongful death action. As we have stated, "[a] court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in W. Va.Code, 31–1–15 [1984] and W. Va.Code, 56–3–33 [1984]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process." Syllabus Point 2, *Abbott v. Owens–Corning Fiberglas Corp.,* 191 W.Va. 198, 444 S.E.2d 285 (1994).

■ In terms of satisfying federal due process requirements, we have held:

> The Due Process Clause of the Fourteenth Amendment to the United States Constitution operates to limit the jurisdiction of a state court to enter a judgment affecting the rights or interests of a nonresident defendant. This due process limitation requires a state court to have personal jurisdiction over the nonresident defendant.

Syllabus Point 1, *Pries v. Watt,* 186 W.Va. 49, 410 S.E.2d 285 (1991)

We have previously addressed the framework for situations where the lack of jurisdiction is raised as a defense. In Syllabus Point 4 of *State ex rel Bell Atlantic–West Virginia, Inc., v. Ranson*, 201 W.Va. 402, 497 S.E.2d 755 (1997), we stated:

> When a defendant files a motion to dismiss for lack for personal jurisdiction under W. Va. R. Civ. P. 12(b)(2), the circuit court may rule on the motion upon the pleadings, affidavits and other documentary evidence or the court may permit discovery to aid in its decision. At this stage, the party asserting jurisdiction need only make a prima facie showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a prima facie showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction. If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence.

At the time of the instant dismissal, the lower court had not held an evidentiary hearing on the motion and the jurisdiction issue was not litigated at trial.

We have also held that:

> In order to obtain personal jurisdiction over a nonresident defendant, reasonable notice of the suit must be given the defendant. There also must be a sufficient connection or minimum contacts between the defendant and the forum state so that it will be fair and just to require a defense to be mounted in the forum state.

Syllabus Point 2, *Pries v. Watt*, 186 W.Va. 49, 410 S.E.2d 285 (1991).

Thus, for the purposes of our review of the lower court's dismissal of this case for lack of personal jurisdiction over Roy Sanwalka's estate, we must look to the allegations contained in the complaint to ascertain whether the appellant made a *prima facie* showing of personal jurisdiction and then determine whether the contacts satisfy federal due process requirements.

The complaint filed by the appellant alleged certain acts or omissions on the part of Roy Sanwalka, in this state. In paragraph 9, the appellant alleges that while in West Virginia, the defendants, through Roy Sanwalka, chose to continue to operate the airplane toward inclement weather. In paragraph 10, the appellant alleges that Roy Sanwalka "acted negligently in the flight plan that he made and implemented in Charleston, West Virginia, to consciously ignore those dangers and to proceed on his intended course from Charleston across West Virginia." In paragraph 11, the appellant's complaint avers that "Defendant's airplane operated by Roy Sanwalka proceeded across the State of West Virginia on this danger course, before reporting airframe icing. Defendant's airplane, operated by Roy Sanwalka, nonetheless continued onward, rather than turning back."

We next examine these allegations in light of the statute regarding this state's jurisdiction over non-residents. West Virginia Code § 56–3–33(2008), the long-arm statute, addresses "actions by or against nonresident persons having certain contacts with this state" and establishes a mechanism for the secretary of state to accept service on their behalf.[7]

---

7. W.Va.Code § 56–3–33 states: (a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the Secretary of State, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

> (1) Transacting any business in this state;
> (2) Contracting to supply services or things in this state;
> (3) Causing tortious injury by an act or omission in this state;

As noted, this statute details seven circumstances through which a non-resident may be subjected to the jurisdiction of the West Virginia courts, and secondly, may be served through the secretary of state's office. Since the appellant need only make a *prima facie*

(4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Having an interest in, using or possessing real property in this state; or

(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her.

(c) Service shall be made by leaving the original and two copies of both the summons and the complaint, and the fee required by section two, article one, chapter fifty-nine of this code with the Secretary of State, or in his or her office, and such service shall be sufficient upon such nonresident: Provided, That notice of such service and a copy of the summons and complaint shall forthwith be sent by registered or certified mail, return receipt requested, by a means which may include electronic issuance and acceptance of electronic return receipts, by the Secretary of State to the defendant at his or her nonresident address and the defendant's return receipt signed by himself or herself or his or her duly authorized agent or the registered or certified mail so sent by the Secretary of State which is refused by the addressee and which registered or certified mail is returned to the Secretary of State, or to his or her office, showing thereon the stamp of the post-office department that delivery has been refused. After receiving verification from the United States postal service that acceptance of process, notice or demand has been signed, the Secretary of State shall notify the clerk's office of the court from which the process, notice or demand was issued by a means which may include electronic notification. If the process, notice or demand was refused or undeliverable by the United States postal service the Secretary of State shall return refused or undeliverable mail to the clerk's office of the court from which the process, notice or demand was issued. If any defendant served with summons and complaint fails to appear and defend within thirty days of service, judgment by default may be rendered against him or her at any time thereafter. The court may order such continuances as may be reasonable to afford the defendant opportunity to defend the action or proceeding.

(d) The fee remitted to the secretary of state at the time of service shall be taxed in the costs of the action or proceeding. The secretary of state shall keep a record in his or her office of all such process and the day and hour of service thereof.

(e) The following words and phrases, when used in this section, shall for the purpose of this section and unless a different intent be apparent from the context, have the following meanings:

(1) "Duly authorized agent" means and includes among others a person who, at the direction of or with the knowledge or acquiescence of a nonresident, engages in such act or acts and includes among others a member of the family of such nonresident or a person who, at the residence, place of business or post office of such nonresident, usually receives and receipts for mail addressed to such nonresident.

(2) "Nonresident" means any person, other than voluntary unincorporated associations, who is not a resident of this state or a resident who has moved from this state subsequent to engaging in such act or acts, and among others includes a nonresident firm, partnership or corporation or a firm, partnership or corporation which has moved from this state subsequent to any of said act or acts.

(3) "Nonresident plaintiff or plaintiffs" means a nonresident of this state who institutes an action or proceeding in a circuit court in this state having jurisdiction against a nonresident of this state pursuant to the provisions of this section.

(f) The provision for service of process herein is cumulative and nothing herein contained shall be construed as a bar to the plaintiff in any action or proceeding from having process in such action served in any other mode or manner provided by the law of this state or by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction.

(g) This section shall not be retroactive and the provisions hereof shall not be available to a plaintiff in a cause of action arising from or growing out of any of said acts occurring prior to the effective date of this section.

showing of personal jurisdiction at the time that this case was dismissed, we review the appellant's original complaint in that light.

The appellant's complaint alleged that Roy Sanwalka made a series of negligent decisions while in the state of West Virginia. These decisions included the filing of an improper flight plan, and initiating and continuing the flight toward the Bahamas in the face of adverse weather. The appellant further alleges once the flight from Yeager Airport continued until the airplane began icing, Roy Sanwalka "nonetheless continued onward, rather than turning back."

Based upon the appellant's complaint, we believe that the circuit court erred in dismissing this case for lack of personal jurisdiction. The appellant alleged sufficient facts to show that Roy Sanwalka caused "a tortious injury by an act or omission within this State," which would suffice under the long-arm statute as grounds for the West Virginia court to have jurisdiction. Thus, there were sufficient allegations contained in the appellant's complaint to support the assertion that West Virginia had jurisdiction over the matter.

■ However, the Supreme Court and this Court have held that personal jurisdiction over a non-resident defendant is alone not enough to support a state's exertion of authority. There must further be a showing of minimum contacts "by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum state." *Pries, supra,* at 51, 410 S.E.2d at 287. The evolution of the notion of minimum contacts was noted by Justice Workman in a decision involving use of the long-arm statute to effectuate jurisdiction over a non-resident father in a child support proceeding. In *Lozinski v. Lozinski,* 185 W.Va. 558, 408 S.E.2d 310 (1991), we held:

> Prior to the enactment of the West Virginia long-arm statute in 1978, plaintiffs attempting to hale nonresidents into this state's tribunals were required to successfully clear the "minimum contacts" hurdle first enunciated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Id.* at 316, 66 S.Ct. at 158, 90 L.Ed. at 102. In *International*

*Shoe,* the United States Supreme Court ruled that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* (citing *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940), reh'g denied *Milliken v. Meyer,* 312 U.S. 712, 61 S.Ct. 548, 85 L.Ed. 1143 (1941)). Applying the "minimum contacts" rule proved difficult, however, because the standard's inherent vagueness left it subject to continuous and varying interpretation. See *Harman v. Pauley,* 522 F.Supp. 1130, 1136 (S.D.W.Va. 1981) (noting that *International Shoe* "minimum contacts" rule failed to establish any "clear-cut parameters ... and thus courts were left to a case by case determination whenever the issue was presented"). When "minimum contacts" was the prevailing test for exercising extraterritorial jurisdiction, we think it is fair to suggest that many prospective plaintiffs may have been discouraged from instigating a cause of action against a nonresident given the uncertainty of convincing a given tribunal that the requisite "minimum contacts" with the forum state had been established.

*Lozinski* at 561, 408 S.E.2d at 313.

■ Here, the appellees argue that there were insufficient minimum contacts between West Virginia, Roy Sanwalka and Aries to warrant the establishment of personal jurisdiction. In terms of Aries, the appellees argue that there is no connection whatsoever between this state and the Canadian corporation. There remains a factual dispute as to whether Roy Sanwalka was in fact an employee of Aries. The appellees note that the appellant's claim against Aries is on a theory of vicarious liability based upon the actions of Roy Sanwalka. The appellees contend that the single incident of landing an airplane in West Virginia while en route to the Bahamas, across part of Canada and several states within the United States, does not establish the level of activity necessary to comport with federal due process requirements.

Examining all the connections of Aries and Roy Sanwalka to West Virginia, we note that the initial contacts between Roy Sanwalka and West Virginia were not fleeting. While his time here was brief, it was here where the cause of action arose. On top of availing himself of West Virginia's airport facilities, he made certain decisions while in West Virginia that, when considered in the light most favorable to the plaintiff, led directly to the death of himself and Ms. O'Brien. He filed a flight plan that, in the eyes of the appellant's expert, was ill-advised and was perhaps unlawful. After he departed from Yeager Airport, Roy Sanwalka chose not to return to Charleston when the airplane's airframe became iced in West Virginia. These were, in the final measure, significant not fleeting contacts with West Virginia.

■ In terms of exercising jurisdiction over Aries, the appellants argue that Aries is culpable for the acts of Roy Sanwalka because he was acting as their agent and employee, was acting within the course and scope of his employment with Aries, and was operating the airplane with the authorization, permission and direction of Aries. It is undisputed that Aries Technologies never transacted business within West Virginia's borders, never traveled here on business or pleasure other than on the ill-fated occasion giving rise to this litigation or otherwise derived any benefits from West Virginia. However, it did own the airplane that was being used by its alleged agent and employee Roy Sanwalka, who at the very least is a part-owner of the corporate entity and who was alleged to have been negligent in his operation of said aircraft. Moreover, we are unaware of any argument by Aries that Roy Sanwalka had improperly, or unlawfully, taken the airplane in question. In view of these circumstances, we believe it is not unreasonable to conclude that Aries had sufficient minimum contacts to warrant West Virginia's assertion of jurisdiction.

Thus, we disagree with the circuit court's conclusion that there were insufficient minimum contacts to support a finding that West Virginia has jurisdiction over this matter as well as over Roy Sanwalka and Aries Technologies. Although Roy Sanwalka was in West Virginia for less than a day, what transpired in that time resulted in sufficient minimum contacts to support an assertion of jurisdiction over this matter by West Virginia.

**b. Whether the long-arm statute authorizes service upon a non-resident's estate representative?**

■ Having established that the appellant's complaint did state sufficient grounds for the invocation of West Virginia jurisdiction over a wrongful death action, and that the appellees have sufficient minimum contacts for this assertion of jurisdiction, we must now determine whether service of process against the appellees, first as the personal representative of the estate of the deceased pilot, Roy Sanwalka, and against the foreign corporation partially owning the aircraft being piloted by the Roy Sanwalka, was properly accomplished. We must resolve whether our statutory language authorizes the effectuation of service upon the personal representative of an estate. In the instant case, the respondents argue that the long-arm statute does not authorize service of process on a non-resident representative of an estate.

As set forth above, West Virginia's long-arm statute, contained in W. Va.Code § 56–3–33, details seven circumstances through which a non-resident may be subjected to the jurisdiction of the West Virginia courts, and then be served. W. Va.Code § 56–3–33(e)(3) defines "nonresident" as "any person, other than voluntary unincorporated associations, who is not a resident of this state or a resident who has moved from this state subsequent to engaging in such act or acts." The definition includes a nonresident firm, partnership or corporation or a firm, partnership or corporation which has moved from this state subsequent to any of said such act or acts.

There is no explicit mention of jurisdiction or service upon the administrator, administratrix, executor, executrix or other personal representative for a deceased non-resident whose action may fit within the seven detailed activities included in the long-arm statute. In the final order, the circuit court compared and contrasted this general long-arm statute to two other specific statutes

dealing with actions against non-resident drivers[8] and non-resident bail bondsmen.[9] The specific language of these statutes explicitly names the personal representative of estates and details the role of the secretary of state in service of process.

The circuit court concluded that it "should not read into the statute that which it does not say." The circuit court concluded that because the long-arm statute authorizing service of non-residents stood in derogation of the common law, it must be strictly construed, citing Syllabus Point 3 of *Phillips v. Larry's Drive–In Pharmacy, Inc.*, 220 W.Va. 484, 486, 647 S.E.2d 920, 922 (2007) (citing *Kellar v. James*, 63 W.Va. 139, 59 S.E. 939 (1907)). Furthermore, the circuit court found that statutes in derogation of the common law "are given effect only to the extent clearly indicated by the language used, [and] as such, nothing may be added unless by necessary implication arising from such language." Syllabus Point 4, *Phillips*, (citing *Bank of Weston v. Thomas*, 75 W.Va. 321, 83 S.E. 985 (1914)). Finally, the circuit stated that "the express mention of one thing implies the exclusions of another," in citing the statutory construction rule of *expression unius est exclosuio alterius*, as noted in Syllabus Point 6 of *Phillips* (citing *Manchin v. Dunfee*, 174 W.Va. 532, 327 S.E.2d 710 (1984)).

While we acknowledge our previous holdings regarding statutory interpretation to be sound, we must refrain from creating the irrational situation where a cause of action plainly exists but where there is no mechanism to serve the offending party. As the appellant noted, was there a rational reason the Legislature meant to restrict the class of persons subject to the jurisdiction of our courts, particularly when it has otherwise provided for the initiation and continuation of actions against the personal representatives of deceased wrongdoers in other statutory sections. Our wrongful death statute states, in W. Va.Code § 55–7–5, that the right of action for wrongful death "shall survive the death of the wrongdoer, and may be enforced against the executor or administrator." Yet under the analysis of the circuit court, there would be no mechanism to serve the nonresi-

dent executor of a deceased tortfeasor. In the case *sub judice*, the appellant could sue in West Virginia but would have great difficulty in obtaining service upon Roy Sanwalka's estate. That would make no sense.

We have held that in regard to statutory construction, this Court should not create situations where a strict interpretation would lead to an unjust, much less senseless, result. We have held:

> "'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925)."

Syllabus point 2, *Conseco Finance Servicing Corp. v. Myers*, 211 W.Va. 631, 567 S.E.2d 641 (2002).

Therefore, while acknowledging our rules of statutory construction and interpretation, we find that the circuit court was clearly wrong in its determination that the long-arm statute does not allow for the service of a non-resident's estate. We conclude and hold that under the broad language of West Virginia's long-arm statute, West Virginia Code § 56–3–33 authorizes service of process upon the personal representative of a non-resident's estate.

### c. *Forum non conveniens*

As a secondary ground for the dismissal of the petitioner's complaint, the lower court cited the doctrine of *forum non conveniens*. We have previously defined the phrase as follows: "The common law doctrine of *forum non conveniens* is simply that a court may, in its sound discretion, decline to exercise jurisdiction to promote the convenience of witnesses and the ends of justice, even when jurisdiction and venue are authorized by the letter of a statute." Syllabus point 1, *Norfolk & Western Railway Co. v. Tsapis*, 184 W.Va. 231, 400 S.E.2d 239 (1990).

---

**8.** W.Va.Code § 56–3–31 (2008).

**9.** W.Va.Code § 56–3–34 (2008).

This Court specifically adopted this common law doctrine in *Norfolk & Western Railway Co. v. Tsapis,* 184 W.Va. 231, 400 S.E.2d 239 (1990). In Syllabus Point 3 we stated: "The common law doctrine of *forum non conveniens* is available to courts of record in this State. The doctrine accords a preference to the plaintiff's choice of forum, but the defendant may overcome this preference by demonstrating that the forum has only a slight nexus to the subject matter of the suit and that another available forum exists which would enable the case to be tried substantially more inexpensively and expeditiously. To the extent that *Gardner v. Norfolk & Western Railway Co.,* 179 W.Va. 724, 372 S.E.2d 786 (1988), *cert. denied,* 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989), declined to apply this doctrine, it is overruled."

The Legislature then codified *forum non conveniens* in W. Va.Code § 56–1–1(a) in 2007. Amended in 2008, the statute reads, in pertinent part:

(a) In any civil action if a court of this state, upon a timely written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action, or dismiss any plaintiff: *Provided,* That the plaintiff's choice of a forum is entitled to great deference, but this preference may be diminished when the plaintiff is a nonresident and the cause of action did not arise in this state. In determining whether to grant a motion to stay or dismiss an action, or dismiss any plaintiff under the doctrine of forum non conveniens, the court shall consider:

(1) Whether an alternate forum exists in which the claim or action may be tried;

(2) Whether maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;

(3) Whether the alternate forum, as a result of the submission of the parties or

otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

(4) The state in which the plaintiff(s) reside;

(5) The state in which the cause of action accrued;

(6) Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state. Factors relevant to the private interests of the parties include, but are not limited to, the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of a view of the premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Factors relevant to the public interest of the state include, but are not limited to, the administrative difficulties flowing from court congestion; the interest in having localized controversies decided within the state; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty;

(7) Whether not granting the stay or dismissal would result in unreasonable duplication or proliferation of litigation; and

(8) Whether the alternate forum provides a remedy.

In the case at bar, the lower court carefully analyzed the eight factors in determining that this case would be dismissed on the grounds of *forum non conveniens.* As the appellant admits, some of these factors standing alone would support the circuit court's decision. For example, there are clearly other forums in which this dispute could be tried, and each of those forums

provides a remedy to the appellant. As this is a case involving an international flight, with three potential forums for adjudication of this wrongful death action (Canada, Virginia and West Virginia), there are similar difficulties presented in all forums. Regardless of the selection of forum, there are out-of-state and even out-of-country witnesses whose relevant and pertinent testimony would have to be heard.

The statute provides guidance to the court in determining what factors weigh more heavily in the determination of whether a case should be heard in an alternate forum. The statutory *forum non conveniens* provides a mechanism for the court to weigh the various factors, and places emphasis on the plaintiff's choice of forum. What diminishes the choice of forum within the language of the statute is whether the plaintiff is a nonresident and the cause of action did not arise in this state. The statute states, in pertinent part:

> . . . . Provided, That the plaintiff's choice of a forum is entitled to great deference, but this preference may be diminished when the plaintiff is a nonresident and the cause of action did not arise in this state.

W.Va.Code § 56–1–1(a).

Prior to the enactment of this statute, the United States Supreme Court addressed *forum non conveniens* in two landmark cases. In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and *Koster v. Lumbermens Mutual Cas. Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), the Supreme Court established the premise that the plaintiff's choice of forum is given great weight. The Court in *Gulf Oil* held:

> If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all

other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. *But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.* (Emphasis supplied).

In the case *sub judice* the circuit court's order recognized the statutory significance of the appellant's choice of forum, but the lower court also found that the appellant's cause of action did not arise within this state. If that in fact were the case we would have to give due deference to the lower court's decision. However, we do not agree with the lower court's assessment of whether the appellant's cause of action arose in this state. When balancing our clearly deferential appellate standard with the statutory preference for the appellant's choice of forum and the fact that the cause of action being pursued by the appellant actually arose in this state, we conclude that the circuit court abused its discretion in finding that West Virginia was not the appropriate forum for this civil action. Giving the appellant's choice of forum its due deference, we find that the Circuit Court of Kanawha County erred by dismissing this complaint for *forum non conveniens*. The appellant is entitled to be heard in Kanawha County.

## IV.

## CONCLUSION

For the foregoing reasons, the order of the Circuit Court of Kanawha County dated September 8, 2009, is reversed, and this matter remanded with directions to reinstate the complaint of the appellants.

**Reversed and remanded.**

Chief Justice DAVIS DISQUALIFIED.

Judge HUSTEAD, sitting by temporary assignment.